## RUSSELL v. UNITED EMPLOYERS CASUALTY CO.

No. 5859.

Court of Civil Appeals of Texas. Texarkana.

Dec. 31, 1941.

Rehearing Denied Jan. 8, 1942.

576

White & Yarborough, of Dallas, and H. H. Wellborn, of Henderson, for appellant.

Will R. Saunders, of Dallas, and Chas. G. Crenshaw, of Houston, for appellee.

JOHNSON, Chief Justice.

This suit was filed by Lige Russell against United Employers Casualty Company as the compensation insurance carrier for Jenkins Drilling Company, Inc., to set aside a final award of the Industrial Accident Board and to recover compensation for 401 weeks at $20 per week for injury sustained to his right eye, the effects of which he claims extended to other portions of his body and rendered him totally and permanently incapacitated to work. Plaintiff alleged that on September 28, 1937, "while working for Jenkins Drilling Company, Inc., he struck the end of a steel chisel with a hammer in removing a tong key and that a piece of steel struck him in the right eye, being propelled through and in the back thereof, necessitating removal of the eyeball, and injuring the optic nerve and other nerves and tissues in his head, resulting in severe headaches and nervousness; partial loss of sight in the other eye, and the loss of 20 lbs. in weight." The defendant's answer, among other things, contains a general denial and specially denies that plaintiff received an injury other than the loss of his right eye, and alleges that the defendant had paid the plaintiff compensation for such incapacity at the rate of $20 per week for 99 consecutive weeks, and had tendered the 100th payment prior to the filing of this suit.

Upon the verdict of a jury in response to special issues, which included a finding that plaintiff's incapacity resulting from the injury sustained September 28, 1937, "is confined solely to the loss of his right eye," together with the admitted fact that plaintiff had received from defendant 100 checks during the 100 consecutive weeks following his injury, each in the sum of $20, of which 99 had been cashed and the 100th still retained by him, judgment was entered July 15, 1940, that plaintiff take nothing by reason of this suit. His motion for new trial being overruled, plaintiff appealed.

Appellant's propositions 1, 2 and 3 allege that the court erred in overruling his motion to disregard the jury's answer to special issue No. 23, wherein they found that the incapacity resulting from the injury sustained by plaintiff is confined solely to the loss of his right eye, because such finding is without support in the evidence, and in not rendering judgment for him as prayed for, upon the remaining answers of the jury, which included findings, in answer to special issues Nos. 4 and 5, that plain-

tiff had sustained total and permanent incapacity. The contention is not sustained. Upon examination of the record we find that the answer of the jury in response to special issue No. 23 is fully supported in the testimony of Dr. V. R. Hurst and Dr. C. D. Culp. Dr. Hurst testified, in substance, that he made a physical and X-ray examination and treated appellant on the morning of his injury; that appellant's injury consisted of a small piece of steel penetrating the front wall of his right eyeball, lodging "almost in the center in each direction", and did not pass through the back wall of the eyeball or hit the optic nerve; that he extracted the piece of steel by use of an electric magnet applied to the wound; that on the 8th day following, appellant returned to the hospital and it was found that a low-grade inflammation had developed, and as there was so small chance of saving the vision, the eyeball was removed on the 14th day after the injury; that he continued to see and examine appellant until July 22, 1938, during which time an artificial eye was furnished appellant; that he examined appellant's left eye on the occasion of his first treatment and continuously thereafter until July 22, 1938, and that it was normal and remained unaffected and without any sympathetic optholmy, eyestrain, or need of glasses; that after removal of the eyeball the left eye completely healed, leaving no condition which in his opinion "would cause a general debility of this young man or affect his health." Dr. Culp testified that he made a thorough physical and X-ray examination of appellant on the day before giving his testimony in the trial. He gives in much detail his findings from the examination, which are to the effect that the injury causing removal of appellant's right eyeball has completely healed, without any harmful results to any other portion of his body. His findings are summed up in the following question propounded to and answered by him:

"Q. From your physical examination, Doctor, state whether or not you found anything the matter with this young man that would indicate to you that he is now suffering as a result of having received a piece of steel in his right eye, which caused it to have to be removed and when later the eye was removed on or about the 11th day of October, 1937, that would disable him at this time?" A. Nothing only just the loss of his right eye, there is no condition in his eye that would cause anything physically bad in his body condition at all."

Under his 4th proposition appellant contends that the jury's findings in response to special issues No. 4 and No. 5, "that plaintiff sustained total and permanent incapacity," and the jury's findings in response to special issue No. 23, "that the incapacity sustained by plaintiff is confined solely to the loss of his right eye," are in irreconcilable conflict and therefore can not form the basis of a judgment. We do not think such findings are in irreconcilable conflict, especially so in view of the record here presented, without any finding or any request therefor, that the injury sustained to his right eye had extended to or affected other portions of his body as alleged by appellant. Federal Underwriters Exchange v. Arnold, Tex.Civ.App.. 127 S.W.2d 972; Texas Employers Ins. Ass'n v. Galloway, Tex.Civ.App., 40 S.W.2d 973; Federal Underwriters v. Simpson, Tex.Civ.App., 137 S.W.2d 132, 134. From the case last cited we quote: "The rule was laid down in Petroleum Co. v. Seale, Tex.Com.App., 13 S.W.2d 364, 365, approved by the Supreme Court, that where injury results to a particular member of the body, compensation for loss of which is specifically provided by the statute, liability of the insurer is limited to that amount, even though the loss of, or injury to, that particular member actually results in total permanent incapacity of the employee to labor. This holding has been frequently followed and applied. See Texas Employers. Ins. Ass'n v. Galloway, Tex.Civ.App., 40 S.W.2d 973; Texas Employers' Ins. Ass'n v. Neatherlin, Tex.Com.App., 48 S.W.2d 967; Consolidated Underwriters v. Wilson, Tex. Civ.App., 111 S.W.2d 865; Traders & General Ins. Co. v. Marrable, Tex.Civ.App., 126 S.W.2d 746; 45 Tex.Jur., § 175, p. 607. This rule, however, does ·not preclude an employee from recovery under the more liberal provisions of the Workmen's Compensation Law, if he allege and prove that the injury to the particular member additionally extended to and affected other portions of his body, or impaired his general health to such an extent as to totally and permanently incapacitate him. See Seale and Neatherlin cases, supra; 45 Tex.Jur., § 178, p. 612; and numerous cases there cited." Keeping the above rule in mind, the findings under consideration when viewed in the light of the court's definition

of "total incapacity" may reasonably be reconciled as meaning that plaintiff's incapacity is confined to the loss of his right eye, thus implying that it had not extended to other portions of his body; that such incapacity had not resulted in "an absolute disability to perform any kind of labor," but had disqualified plaintiff from "performing the usual task of a workingman in such a way as to prevent him from procuring and retaining employment."

■ Appellant's propositions 5 and 6 assert that the trial court erred in overruling appellant's motion for new trial because of a clerical error of the jury in writing their answer to special issue No. 23 as returned and reported in their verdict. The record shows that, in connection with and immediately following special issue No. 23, the trial court instructed the jury to answer: "It is not confined solely to the loss of his right eye," or "It is confined solely to the loss of his right eye," which was followed by blank space in which the jury were instructed to write their answer. As returned into court the jury's answer read: "It is confined solely to the loss of the right eye." Appellant alleges in substance that the jurors unanimously agreed upon the answer: "It is not confined solely to the loss of the right eye", and instructed the foreman to so write such answer in response to the question, but that the foreman through clerical error wrote the answer as contained in the verdict. On hearing of the motion for new trial, all twelve of the jurors were summoned and appeared. Four of them were sworn and called to the witness stand by appellant and testified. Eight of them, including the foreman, did not testify. The testimony of three of the jurors tends to support appellant's allegations of clerical error on the part of the foreman in recording the jury's answer to special issue No. 23, but one of the jurors testified that after electing their foreman the jury first took a vote agreeing to give appellant "all he asked for" and then instructed the foreman to write in answers to the questions so as to bring about that result; "that all the instructions we gave him (the foreman) was that we meant for him (plaintiff) to have what he asked for and it was to be wrote in to that effect, we left it up to the foreman to do that." If, as indicated by the testimony last quoted, the foreman undertook to carry out such instructions, he may have intended to write the answer which he actually wrote, thinking that it would bring about the requested result. Such would not constitute a clerical error. It is further shown that when the verdict was returned, and before the jury was discharged, the court read aloud to the jury special issue No. 23 and the answer thereto, and asked the jurors if they understood the question and if that was their answer thereto, and they each answered in the affirmative. "The trial court was vested with discretionary power to deny it (the motion for new trial upon the alleged ground of clerical error) unless the evidence was of such clear and convincing character as to admit of no other reasonable conclusion than that of unanimous mistake in the nature of a clerical error has been made." Commercial Standard Ins. Co. v. Miller, Tex.Com.App., 48 S.W.2d 618; Caylat v. Houston E. & W. T. Ry. Co., 113 Tex. 131, 252 S.W. 478. We do not think the trial court abused his discretion in overruling the motion for new trial.

The judgment of the trial court is affirmed.