## PATTERSON v. HUGHES.

### No. 9847.

Court of Civil Appeals of Texas. Austin.

Jan. 18, 1950.

Rehearing Denied Feb. 8, 1950.

Byrne & Mulhollan, of Lampasas, for appellant.

James K. Evetts, of Belton, J. V. Hammett, of Lampasas, for appellee.

HUGHES, Justice.

A pickup truck operated by appellant, Warren R. Patterson, collided with an automobile driven by appellee, J. E. Hughes. Patterson sued Hughes for damages sustained in the collision and Hughes counter sued for his damages. Trial before a jury resulted in a verdict that neither party was guilty of negligence. Judgment was accordingly entered that each party take nothing as against the other.

Appellant's first three points relate to jury misconduct which is alleged to be that (1) the answer of the jury to special issue No. 5 was not unanimous; (2) the jury, during its deliberations considered evidence not admitted on the trial; and (3) the verdict of the jury was reached by compromise.

By special issue No. 5 the jury found that Hughes in driving on his own left-hand side of the highway was not guilty of negligence.

Six of the jurors testified, more or less categorically, that they did not vote at all on this special issue or that they did not vote as it was apparently answered. The foreman and the remaining five jurors testified that the issue was answered by the entire jury and that the correct answer was recorded. To show the extremely careful manner in which this jury discharged its duties we quote the testimony of juror Gray:

"Q. Mr. Gray, was Special Issue No. 5, that is the one asking as to Mr. Hughes being negligent, was that issue voted on by the jury? A. Yes, sir, it was.

"Q. Several times. A. Several times, yes, sir.

"Q. Was the answer 'No' written down before the jury agreed unanimously on their answer to that issue? A. No, sir.

"Q. Did the jury finally vote unanimously to answer that question no? A. Yes, sir, they did.

"Q. After they had so voted, I believe you said while ago by a show of hands? A. Yes, sir.

"Q. Then did you ask each one the question? A. Yes, sir.

"Q. After they had so voted, state whether or not the answer was then written down? A. That's right.

"Q. And the vote of the jury was no? A. Absolutely."

The record does not disclose that any objection was made by appellant or any of the jurors when the verdict was received by the court. Only after the jury had been discharged and dispersed did the question of the unanimity of the answer to this issue arise.

 In our opinion no error is shown by the point under discussion because no unanimous clerical error of the jury was shown. Commercial Standard Ins. Co. v. Moore, 144 Tex. 371, 190 S.W.2d 811; also since there was conflict in the testimony of the jurors, the action of the trial court in overruling the motion for new trial constituted a fact finding in support of his ruling, which is binding on this court. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462.

As to the second ground of jury misconduct the evidence shows that Patterson was hauling a breeding jack in his pickup at the time of the collision. Hughes, in his cross action, alleged that there was negligence in this regard in that the sideboards of the pickup were "improper" for this purpose. In answer to a special issue the jury found that the pickup did not have proper side-boards for hauling a jack, but it failed to answer the issue inquiring if this were negligence. Judgment was against Hughes on his cross action and he did not appeal. The "outside evidence" which appellant claims the jury considered all related to the issue as to improper sideboards. Several of the jurors related their experiences in hauling livestock; also some of them explained that a horse 15 hands high did not have the same height as a jack 15 hands high. Just what this difference is the record does not show, nor does it show what the experiences were that jurors had in hauling livestock. Mr. Gray testified that none of the jurors had ever hauled a jack in a pickup.

Juror Jones testified that discussion of the matters complained of by appellant occurred while the jury was considering its answer to the issue concerning appellant's alleged negligence in not having proper sideboards on the pickup.

Under this state of affairs we are convinced that the trial court did not err in refusing to grant a new trial on the ground that the jury received and considered other evidence. We cannot speculate as to what experiences the jurors related nor as to what is the proper standard for measuring a jack.

██ The first eight issues in the charge related to appellant's suit and his allegations of negligence on the part of appellee. In answering these issues the jury found that appellee was not intoxicated; that he was driving on the wrong side of the road but that this was not negligence, and that he did not fail to dim the beam of his car's headlights. With these issues so answered appellant had lost his case. We are unable to see how the discussions regarding hauling livestock and the measurement of a jack could have influenced the jury in answering the issues concerning the negligence of appellee, and hence we are unable to say that such jury misconduct has been proved as to make it reasonably appear that injury therefrom to appellant probably resulted. Rule 327, Texas Rules of Civil Procedure.

██ Neither the assertion nor the proof that the verdict of the jury was reached by

compromise constitutes legal or moral misconduct on the part of the jury. Compromise is the way intelligent men adjust their differences. We have carefully read the testimony of the jurors and have not found the slightest evidence that their verdict was reached by lot or by prearranged binding agreement; on the contrary the deliberations of the jury were shown to have been freely, fairly and efficiently conducted. This point is therefore overruled. 41 Tex. Jur., 863.

Appellant filed a motion to suppress the oral depositions of appellee, on the ground that at the time they were taken appellee had on file only a general denial and appellant did not then know that appellee was to file a cross action for damages. This motion as well as similar objections made to the introduction of the depositions on the trial were overruled. Also overruled was appellant's motion to strike the amended answer setting up the cross action. After this cross action was filed the court delayed trial of the case and appellant does not complain that insufficient time was allowed him or that he was not ready for trial.

■ Clearly no error is shown in these rulings. Frequently when an answer is first filed the facts are not well enough known to answer fully. It is certainly good practice to amend pleadings to conform to evidence procured by depositions.

Complaint is also made that the court erred in submitting an issue inquiring if appellant failed to drive his truck far enough to the right to avoid the collision and in submitting the ancillary issues of negligence and proximate cause. The primary issue was answered "Yes" and the other two were unanswered.

These issues were objected to "because the same places a duty upon this plaintiff to pull to his right side of the road to allow defendant to pass; that said issue has been correctly submitted under the special issue on discovered peril and the submission of said issue is a duplication of issue and places a greater burden on plaintiff than is required by law."

■ The primary issue called for a fact finding which was made but not used as a basis for judgment for or against appellant, and we therefore need not determine whether or not it could have been so used. We cannot even imagine how appellant has been harmed by the submission of these issues and therefore decline to hold that there was reversible error in so doing.

The judgment of the trial court is affirmed.

Affirmed.