**156**

Lamar H. DICKEY, Appellant,

v.

The TRAVELERS INSURANCE COMPANY,
Appellee.

No. 13903.

Court of Civil Appeals of Texas.

Houston.

March 29, 1962.

Rehearing Denied April 19, 1962.

Virgil E. Cammack, Jr., Houston, for appellant.

Walter E. Workman, Houston, Baker, Botts, Andrews & Shepherd, Houston, of counsel, for appellee.

COLEMAN, Justice.

This is a Workmen's Compensation Insurance case.

Appellant recovered a judgment for eleven days total disability and 216 weeks temporary partial disability. On computation the jury's award amounted to $532.55.

Appellant contends that this award was totally inadequate and manifestly unjust and inequitable considering his injuries and the extent of his incapacity to labor. He also contends that the answer made by the jury to the issue inquiring as to his wage earning capacity while temporarily disabled was contrary to the great preponderance of the evidence.

Appellant has been in the employ of Rath Packing Company for about twelve years, and at the time of the injury made the basis of this suit was working as a meat grinder. This involved lifting heavy chunks of frozen meat with a shovel. Immediately after the injury to his back, he was seen by his supervisor in a stooped-over position. Appellant reported an injury to his back, but finished the day's work. The next day he went to Dr. Young, who, after treating him for some time, sent him to Dr. Palm where he was examined, x-rayed and treated by conservative methods. While being treated by Dr. Young

and Dr. Palm, appellant continued working except for the first eleven days. He was on light duty for about one month and then went back to his regular job for a month or a month and a half, when at his own request he was returned to light duty. He continued to work for the company and, according to the testimony of his supervisor, his job in the reduced classification of laborer is secure. He did not do all of the work usually required of men classified as laborers. His supervisor testified that he did his work well, though he was a little slow even before the injury. While working as a grinder after the injury complained of, he had some falls and was involved in an automobile accident but he denied that these incidents adversely affected his condition. Appellant testified that he had suffered pain ever since the accident and that it had not gotten better. His supervisor, Mr. Cordes, testified that appellant was not a "complainer" and was a conscientious worker. He testified that appellant had told him that his back was not exactly the way it was before the accident. He further testified that appellant could not stay in the cooler for long periods without complaint. He testified concerning the work appellant was doing as a laborer and that it was work that would cause back pain in a man not used to it.

Dr. Young testified that when he first examined appellant he was of the opinion that he had a mild lumbo sacral strain, which produced little or no pain, and that when he released him for regular work after about two months he found no physical reason why appellant couldn't do his regular work and that he found no symptoms whatever of a ruptured disc, but he advised appellant not to do anything foolish like trying to "juggle a big, heavy thing up on your shoulders."

Dr. Palm testified that appellant's physical findings were not consistent and that some definitely were not anatomical; that since he would not admit to any improvement in his condition from rest, light duty or being relieved from work in the cold storage vaults, which, he complained, aggravated his condition, he saw no point in continuing treatments. He testified that while there was room for error, he did not believe it possible that appellant had any ruptured intervertebral discs.

Dr. Donovan testified that he examined appellant some nine months after the accident and found nothing wrong with his back and no condition that could be producing any pain; that if he had sustained an injury, it had completely cleared up at the time he saw him.

About thirteen months after the accident appellant went to Dr. Markewich, who, on examination, found slight muscle spasm, slightly limited motion and some tenderness, but found no evidence of nerve pressure, sensory or reflex changes. On a subsequent examination a week later he found slight evidence of radiating pain with probability of some nerve irritation. About two weeks later he found muscle spasm, limited motion of back, tenderness, evidence of nerve root pressure or irritation, and some evidence of sensory change. He sent appellant to Dr. Tyner for a myelogram. Dr. Tyner testified that this test demonstrated large protrusions at discs three and four. Both Dr. Tyner and Dr. Markewich gave a diagnosis of herniations at the third and fourth discs. Dr. Donovan testified after looking at the myelographic films that it was possible that they showed protrusions and that considering the myelograms together with his clinical findings, he would not be able to reach a diagnosis because his clinical findings revealed nothing to indicate disc pathology in the back.

While appellant and his wife testified that he suffered pain and he complained to the doctors about pain, he received only one prescription for medication and one refill. James Forrester, a fellow employee, testified that at times he looked like he felt bad, but that he would not ask for help and didn't go home.

The testimony shows that he has been able to do the work assigned him and has

been paid $90.50 per week, the regular rate for laborers, since he dropped back to that classification. Appellant's position at the trial was that he was totally and permanently disabled under the terms of the Workmen's Compensation Act and he introduced no testimony concerning occupations or jobs which he might be able to secure or the wages ordinarily paid in any job other than in the two classifications at which he had worked at Rath Packing Company. His wage rate as a grinder was stipulated to be $94.15 per week.

Appellant does not complain of that part of the jury's verdict finding that his incapacity was partial and that its duration was 216 weeks. The amount of the judgment was correctly determined by a mathematical calculation from the answers to the special issues, only one of which is attacked.

■ The point complaining that the judgment was inadequate, unjust, and inequitable is too general to point out any specific error in a case arising under the Workmen's Compensation Act. The scope of this point is defined by the statement and argument under the point in appellant's brief. An award made by the court as required by the applicable law cannot be said inadequate, unjust or inequitable. Saldana v. Garcia, 155 Tex. 242, 285 S.W.2d 197; Miguez v. Miguez, Tex.Civ.App., 221 S. W.2d 293; Insurance Investment Corp. v. Hargrove, Inc., Tex.Civ.App., 179 S.W.2d 383; Musick v. Pogue, Tex.Civ.App., 330 S.W.2d 696.

The tests to be applied in considering assignments of error relating to the preponderance of the evidence have been considered by this Court frequently (Continental Bus System, Inc. v. Biggers, Tex. Civ.App., 322 S.W.2d 1, ref., n. r. e.; Bardwell v. Anderson, Tex.Civ.App., 325 S.W.2d 929, ref., n. r. e.; Donnell v. Acker, Tex.Civ.App., 343 S.W.2d 718), and will be applied in this case.

■ Accepting as correct, as we must, that appellant was not totally disabled under the provisions of the Workmen's Compensation Act, and, therefore, that he was able to secure and retain employment at a reduced wage, we cannot say that the answer made by the jury on the issue of average weekly wage earning capacity is clearly wrong or manifestly unjust.

Appellant produced a great deal of testimony to the effect that he could not do heavy labor, but he produced no evidence to show what wages he might expect from light duty work other than the fact that he had received $90.50 during the months prior to the trial. It was the jury's function and duty to translate into dollars and cents the value of appellant's labor in his disabled condition. The jury was instructed that in this case the injuries, if any, suffered after the date of the injury at issue should not be considered; that pain is not compensable unless it results in incapacity to work; that partial incapacity results when a workman is able to perform only part of the usual tasks of a workman or laborer of a less remunerative class, causing a reduction in earning capacity. Considering the instructions together with the testimony of his supervisor, Mr. Cordes, concerning the work done by appellant after the accident and the medical testimony offered by appellee, the verdict of the jury is properly supported by credible testimony. While the testimony offered by appellant would have supported a jury finding of a substantial reduction in earning capacity, or of total incapacity as defined in the Workmen's Compensation Act, when we consider the entire record we do not find the verdict clearly wrong, unjust or shocking to the conscience.

Appellant requested a new trial on the ground of jury misconduct. This charge was supported by the testimony of Mrs. Schaer, a member of the jury, to the effect that when she and other jurors were favoring a finding that appellant's condition

of disability was total and permanent, they were asked to go along with the other jurors on the answer "temporary" and in turn the other jurors would yield to them on other issues; that it was necessary for jurors to "trade out" in order to reach a verdict. At the time the duration of the temporary disability was being considered this juror favored answering 216 weeks, but others desired the answer to be 108 weeks. At that time she reminded them of their prior remarks and stated that she would go back and insist on answering that the total disability was permanent. The jury then answered that the duration of temporary disability was 216 weeks. When the verdict was returned into court, the jury was polled and all answered that the answers given represented their verdict. Mrs. Schaer, however, stated that she was hard of hearing and didn't hear all of the questions clearly. No other juror testified and the motion for new trial was overruled.

■■■ Whether misconduct of the jury occurred is a question of fact on which the trial court's decision is final if supported by evidence, but whether misconduct results in probable harm is a question of law. Motley v. Mielsch, 145 Tex. 557, 200 S.W. 2d 622; White Cabs v. Moore, 146 Tex. 101, 203 S.W.2d 200. In the absence of overt acts of misconduct, it is not permissible to probe the minds of the jurors or to supervise their process of reasoning. Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 156 A.L.R. 1028; Menefee v. Gulf C. & S. F. Ry. Co., Tex.Civ.App., 181 S.W.2d 287, ref., w. m. The fact that a jury reaches a verdict by compromising divergent viewpoints does not show misconduct. Patterson v. Hughes, Tex.Civ.App., 227 S.W.2d 397.

■■■ The jury must answer each issue submitted to them by a unanimous vote. If misconduct is shown, it must be by reason of the testimony of Mrs. Schaer that she agreed to abandon her conviction that the disability of appellant was permanent rather than temporary by reason of an agreement on the part of other jurors to defer to her views on some later issue. There are circumstances in evidence which support the implied finding of the trial court that such testimony does not show misconduct. The conversation occurred at the time the jurors were discussing the duration of total disability. When the question of whether or not the partial disability was only temporary was answered we must assume that the jury's answer "temporary" represented the unanimous view of all jurors. When the jury considered their answer to the question of the number of weeks of temporary disability, Mrs. Schaer and the jurors in accord with her were able to persuade the other jurors, who wished to answer a lesser number of weeks, to agree to 216 weeks. Finally, when the jury was polled, all jurors acknowledged that the verdict as returned into court was correct. It is unreasonable to assume that a juror, who was convinced that the claimant's injuries resulted in a permanent condition of total disability, would insist on a finding that, after his views were rejected and it was agreed that the disability was only partial, such condition of partial disability was not permanent and would last a maximum of 216 weeks. It is reasonable to assume that the views of this juror changed by reason of further consideration of the evidence and that the effect of the nebulous agreement on the verdict returned into court, if any, was to cause an increase in number of weeks given as answer to the issue on duration of temporary partial disability from 108 weeks to 216 weeks, which favored appellant.

We are of the opinion that the evidence does not show misconduct of the jury adversely affecting the rights of appellant. Patterson v. Hughes, supra; Bardwell v. Anderson, Tex.Civ.App., 325 S.W.2d 929, ref., n. r. e., and Ballinger v. Herren, Tex. Civ.App., 332 S.W.2d 131.

The judgment of the trial court is affirmed.