Norma Lina **STONE** et al., Appellants,

v.

J. Wesley **MOORE**, d/b/a Bellaire Taxicab Company, et al., Appellees.

No. 262.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

June 11, 1969.

Rehearing Denied July 2, 1969.

Larry Funderburk, Funderburk, Murray & Ramsey, F. Walter Conrad, Jr., Baker, Botts, Shepherd & Coates, Houston, for appellants.

Henry Giessel, Alice Giessel, Talbert, Giessel, Barnett & Stone, Houston, for appellees.

TUNKS, Chief Justice.

This is an appeal from a judgment for defendants in a death case growing out of an intersection collision. The case was tried to a jury. By their verdict, as returned to the court written on a separate sheet of paper, the jury found the defendant driver guilty of several acts and omissions of negligence which proximately caused the collision in question. The verdict sheet also showed a finding that the decedent husband and father of the plaintiffs failed to keep a proper lookout and that such failure was a proximate cause of the collision. No other act or omission of negligence on the part of the decedent was found. When the verdict was handed to the judge the attorneys agreed that he might read the answers only—without reading the questions. This he did. After the verdict was so read to the jury, the judge asked the jury collectively if those were their answers to each and every issue and asked them to raise their hands if not. No juror raised his hand. There was no request to poll the jury. The verdict was received and the jury was discharged.

On the same day that the verdict was returned each of the twelve jurors gave an affidavit to the effect that the answer recorded on the verdict sheet as "We do" in response to special issue No. 15, inquiring as to whether the jury found that the decedent's failure to keep a proper lookout was a proximate cause of the collision, was a clerical error. All of the affidavits were in the same language and included this paragraph:

"I understood that the unanimous vote of the jury was to answer special issue No. 15, set forth below, in the negative, that is to say 'We do not'. In any event it was my personal intention to answer special issue No. 15 in the negative, that is to say 'We do not' and if the answer sheet does in fact contain an answer of 'We do' to special issue No. 15 then that answer does not correctly reflect my answer nor my understanding of the unanimous decision of the jury on Special issue No. 15."

On December 30, 1968, the trial judge rendered and signed a judgment for defendants. On December 31, the plaintiffs filed an original motion for new trial. The

grounds set out in that motion were that the verdict was the result of a unanimous clerical error (reference being made to the 12 affidavits that had been filed) and that there was no evidence that the decedent failed to keep a proper lookout or that such failure was a proximate cause of the collision.

The plaintiffs' original motion for new trial was heard on January 13, 1969. Eleven of the 12 jurors were present and testified. The other juror did not attend because of illness of a relative. The plaintiffs did not request that the hearing be postponed for that reason. Ten of the jurors each testified that he and all of the other jurors voted to answer "We do not" to special issue No. 15. The other juror, a Miss Hall, who was forewoman of the jury, testified that she and all of the other jurors voted to answer special issue No. 15 "We do." She testified that she correctly recorded on the verdict sheet the jury's unanimous answer to special issue No. 15. Upon being confronted with her affidavit, she testified as follows:

"A: This is the answer signed by myself because Mr. Funderburk and his associates approached us in the assembly-room—it was our legal ability to answer some of the questions that interferred with our intention.

"Q: (By Mr. Conrad) Let me ask you just in plain words, Miss Hall. On December the 12th, the date that affidavit is dated, did you swear under oath that you had answered that issue and intended to answer that issue 'We do not'?

"A: My intention—I signed this—yes, but my intention was that we had made a legal error on the question putting Mr. Stone in blame with the accident or for the accident—

"Q: Miss Hall—I beg your pardon, when you signed that affidavit under oath, did you tell the truth?

"A: Yes, I told the truth.

"Q: Would you state whether you did or did not vote on Special Issue No. 15 'We do not'?

"A: No, I voted 'We do'.

"Q: And what does that affidavit say?

"A: It states that we do not—evidently from the legal standpoint—

"Q: Was that your recollection on December the 12th—that is what is stated in the affidavit?

"A: It states here but that is a legal interpretation part—but the statement made by Mr. Funderburk was that we had blamed Mr. Stone with the accident which was not our intent.

"Q: Did you sign that affidavit on December the 12th under oath?

"A: Yes I did but I did not say that I answered the question 'We do not'.

"Q: Does that affidavit state the truth?

"A: Well, your interpretation and mine would probably be different because I am not familiar with your legal terms.

"Q: I am only asking you does that affidavit state the truth?

"A: It states the truth of what I was told that we had answered the question wrong on Mrs. Stone's behalf—

"Q: If it is untrue why did you sign that affidavit under oath on December the 12th?

"A: Only because of my inability to interpret some of your legal terms.

"Q: Did you misunderstand a single word in that paragraph you just read?

"A: As words—maybe not, but the interpretation—yes—

"Q: What did you misunderstand on December the 12th?

"A: I thought by signing the affidavit we were able to correct the answer for

No. 15 so that Mrs. Stone would benefit by the Court's decision."

Her testimony in explanation of her signing the affidavit is susceptible of being construed that the jury intended to answer the issue favorably to the plaintiffs, that she learned that the answer to special issue No. 15 precluded recovery by the plaintiff, that she thought the jury had the right to show its intention to answer the issues favorably to the plaintiff, and that that was what she thought she was doing when she signed the affidavit.

At the close of the hearing on plaintiffs' original motion for new trial on January 13th, the trial court orally announced from the bench his order that the motion be overruled. The written order overruling the motion shows on its face that it was signed on January 20, 1969.

On January 15, 1969, the plaintiffs filed an amended motion for new trial. In that motion they again stated their unanimous clerical error ground. As an alternative to that ground the amended motion stated as a ground for new trial the contention that the testimony of ten of the jurors was to the effect that their answers to special issue No. 15 was "We do not" and the testimony of Miss Hall was that her answer was "We do" so that "Even if the testimony of the forelady is accepted, i. e., her individual vote was 'we do', in accord with the answer written on the jury answer sheet, it can only establish that the jury did not unanimously answer Special Issue No. 15. For this reason, the Court's judgment does not rest upon a unanimous verdict." The amended motion also repeated the "no evidence" grounds.

The plaintiffs undertook to present their amended motion on January 20, 1969. The juror who had been absent at the January 13th hearing on the original motion was present and the plaintiffs asked that her testimony be heard. The trial judge ruled that the amended motion was "an improper motion," declined to hear it, and signed an order to that effect. No other order was signed disposing of that amended motion. The parties stipulated that if the 12th juror had testified she would have testified consistent with the facts recited in her affidavit.

The earliest possible date from which to compute the time in which to take the steps necessary to perfect appeal was January 20, 1969. The order overruling appellants' original motion for new trial shows on its face that it was signed on that date. Rule 306a, Texas Rules of Civil Procedure. The procedural steps necessary to perfect appeal were taken within the time required by the Rules of Civil Procedure as computed from that date and appeal has been perfected.

Appellant's points of error are to the effect that the trial court erred in not ordering a new trial because of unanimous clerical error; that the trial court erred in refusing to hear the amended motion; and that the trial court erred in not ordering a new trial because the verdict was not unanimous. We overrule those points of error.

The Texas law with reference to the granting of a new trial because of clerical error in recording and announcing a unanimous verdict is thoroughly discussed and firmly established in Caylat v. Houston E. & W. T. Ry. Co., (Comm.App., opinion adopted), 113 Tex. 131, 252 S.W. 478. The Court there held that unanimous clerical error, if established in a hearing on a motion for new trial, was a proper ground upon which to grant a new trial. In discussing the trial judge's function as a fact finder in the hearing on such motion, the Court said, at p. 482:

"After a full hearing upon the motion the trial court was vested with discretionary power to deny it, unless the evidence were of such clear and convincing character as to admit of no other reasonable conclusion than that a unanimous mistake in the nature of a clerical error had been made."

On the record before us we hold that the evidence was not so clear and convincing upon the question of unanimous clerical error as to deprive the trial judge of his discretionary power to overrule the motion. It is true that the testimony of Miss Hall was contrary to her affidavit, but her explanation of the conflict was not wholly unbelievable. The trial judge was in better position to decide whether to believe that explanation than we are. It is equally true that the testimony of the other jurors was contrary to their tacit affirmation of the verdict as read to them while they were still under oath as jurors. It is readily apparent that the jurors were sympathetic with the widow and children of the decedent. Whether they were or were not told of the effect of their answer to special issue No. 15 before they signed their affidavits and gave their testimony, it must have been obvious to them that the verdict showing their answer to special issue No. 15 was not satisfactory to the plaintiffs' lawyers. The trial judge was not required to and did not file findings of fact. We must presume that he made any finding or findings not precluded by the clear and convincing evidence which would support his order overruling the motion for new trial. Under the evidence he could have found that the verdict sheet correctly showed the unanimous verdict of the jury or that it, at least, correctly showed Miss Hall's answer to special issue No. 15. Either finding would sustain the overruling of the motion. See Nevarez v. Missouri Pac. R. Co., Tex.Civ.App., 333 S.W.2d 394, no writ. hist.; Patterson v. Hughes, Tex.Civ. App., 227 S.W.2d 397, no writ. hist.; Russell v. United Employers Casualty Co., Tex. Civ.App., 158 S.W.2d 575, err. ref., w. o. m.; Harvey v. Gulf C. & S. F. Ry. Co., Tex.Civ.App., 261 S.W. 197, aff'd, Tex. Com.App., 276 S.W. 895, motion for rehearing overruled, Tex.Com.App., 278 S.W. 839.

Appellants' next complaint as to the action of the trial court relates to his refusal to hear their amended motion for new trial setting up as a new ground, alternatively, the claim that the judgment was not based on a unanimous verdict. They argue that Miss Hall's testimony can be construed as showing that she answered special issue No. 15 "We do" and the other jurors answer it, "We do not," thus showing lack of unanimity of the verdict.

In this connection a question arises as to whether the amended motion for new trial was timely filed. See Rule 306a and Rule 329b(2), T.R.C.P. It is not necessary to the disposition of this case, however, that that question be resolved.

As noted above the procedural steps necessary to perfect appeal were timely taken whether the amended motion was or was not properly filed. The trial judge had already given the plaintiff a full hearing on the unanimous clerical error and "no evidence" grounds in the original motion. The only alleged ground added to the amended motion was lack of unanimity in the verdict. The law does not permit the jurors to testify that the verdict is contrary to the findings of some, but not all, of the jurors. Clerical mistakes may be shown only if the verdict returned is contrary to the unanimous verdict of the jurors. Caylat v. Houston E. & W. T. Ry. Co., supra; Harvey v. Gulf C. & S. F. Ry. Co., supra; McCormick & Ray, Texas Law of Evidence, Vol. I, p. 338, Sec. 398; Wigmore on Evidence, (McNaughton, Revision), Vol. VIII, p. 717, Sec. 2355. Therefore, even if the amended motion was properly and timely filed, the trial judge did not err in refusing to hear it because it did not present any controlling grounds that had not already been fully heard and ruled upon.

The "no evidence" grounds in plaintiffs' motion for new trial have been abandoned. No points of error challenging the evidentiary support for the verdict have been presented and no statement of facts as to the trial on the merits was filed.

The judgment of the trial court is affirmed.