# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00472-CV

**City of Austin, Appellant**

**v.**

**Ronnie Esparza, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-05-000132, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## CONCURRING AND DISSENTING OPINION

Because I agree with the majority's resolution of the first issue on appeal, I join that portion of the opinion. However, for the reasons detailed below, I respectfully dissent from the remainder of the opinion by the majority.

As described by the majority, in its second issue, the City challenges the legal and factual sufficiency of the evidence supporting the jury's determination that Esparza was disabled as a result of the injury that he sustained on June 10, 2003. The labor code defines "disability" as "the inability because of a compensable injury to obtain and retain employment at wages equivalent to the preinjury wage," Tex. Lab. Code Ann. § 401.011(16) (West Supp. 2010), and this definition was incorporated into the jury charge. Among other reasons, the City challenges the sufficiency of the

evidence by contending that insufficient evidence was presented regarding Esparza's ability to earn his pre-injury wage during the alleged period of disability.[1]

In evaluating the legal sufficiency of evidence presented at trial, reviewing courts must determine if the evidence as a whole would allow "reasonable and fair-minded people to differ in their conclusions." *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement." *Id.* Further, a reviewing court "must view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and

---

[1] As outlined in the majority's opinion, the following questions were placed in the jury charge: (1) was Esparza injured on June 10, 2003, (2) was Esparza disabled because of the injury, and (3) how long did the disability last. In their opinion, the majority notes that in its brief the City contends that there is insufficient evidence to support the jury's determination regarding the second question. For that reason, the majority surmises that the City is not challenging the period of disability and that the only issue presented is whether there is any evidence in the record to support a determination that Esparza was disabled at any time after his alleged injury.

I cannot endorse the majority's supposition. Although the existence of a disability and the period of disability were listed in two questions in the charge, the two considerations have been tied together from the beginning as evidenced by the fact that the Commission combined the two considerations into one question when it listed what issues it was faced with deciding during its review of Esparza's claims. In fact, in its first issue, the City contested the propriety of breaking those considerations into separate questions, and the framing of that issue no doubt affected the phrasing that the City used in its second issue. In any event, in addition to stating that there was insufficient evidence to support a determination that Esparza was disabled, the City also asserts in its second issue that there was insufficient evidence showing that Esparza was not able to earn his pre-injury wages "during the relevant time period." Given that the jury specified that Esparza was disabled from July 19, 2003, to February 5, 2004, and given the City's challenge to the evidence of disability "during the relevant time period," I believe that the City's second issue is more fairly read as asserting that there is insufficient evidence showing that Esparza was disabled for the period of time found by the jury. Accordingly, I believe that to survive this challenge, there must be evidence demonstrating that Esparza was disabled (unable to obtain pre-injury wages) during that period of time. For the reasons more thoroughly explained in the body of the opinion, I do not believe that the evidence is legally sufficient.

2

disregarding contrary evidence unless reasonable jurors could not." *Id.* at 807; *see id.* at 822. The evidence is legally insufficient if "there is no more than a scintilla of evidence proving the elements of the claim." *Columbia Med. Ctr. Subsidiary, L.P. v. Meier*, 198 S.W.3d 408, 413-14 (Tex. App.—Dallas 2006, pet. denied). Evidence is nothing more than a scintilla and, therefore, no evidence when the evidence offered does nothing more than create a "mere surmise or suspicion" of the existence of a vital fact. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010). For factual sufficiency challenges, reviewing courts "must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). A reviewing court may not simply substitute its judgment for that of the fact finder. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Under both standards, the jury is the sole judge of the credibility of the witnesses and of the weight to be given to the witnesses' testimonies. *See City of Keller*, 168 S.W.3d at 819; *Pascouet*, 61 S.W.3d at 615-16.

In addressing the sufficiency of the evidence regarding disability, courts must examine the evidence in light of the statutory definition provided by the legislature. Statutory construction is a question of law that is reviewed de novo. *See Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002); *USA Waste Servs. of Houston, Inc. v. Strayhorn*, 150 S.W.3d 491, 494 (Tex. App.—Austin 2004, pet. denied). In construing a statute, courts must ascertain the legislature's intent in enacting the statute. *Fleming Foods of Tex. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). In making this determination, courts should look to the plain meaning of the words used in the statute. *See Fireman's Fund County Mut. Ins. Co. v. Hidi*, 13 S.W.3d 767, 768-69

3

(Tex. 2000). Reviewing courts should presume that every word was deliberately chosen and that excluded words were left out on purpose. *USA Waste Servs.*, 150 S.W.3d at 494. When determining legislative intent, the entire act, not isolated portions, must be considered. *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998). Courts may also consider the "object sought to be attained" by enacting the statute, the "circumstances under which the statute was enacted," and the "consequences of a particular construction." Tex. Gov't Code Ann. § 311.023 (West 2005); *see City of Austin v. Southwestern Bell Tel. Co.*, 92 S.W.3d 434, 442 (Tex. 2002).

Workers' compensation statutes were initially enacted to "meet the needs of an increasingly industrialized society." *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 510 (Tex. 1995). By promulgating these statutes, the legislature essentially replaced the more traditional common law causes of action that an employee might initiate against an employer. *See id.* Under the modern statute, the legislature has provided "four levels of income benefits: 1) temporary income benefits; 2) impairment income benefits; 3) supplemental income benefits; and 4) lifetime benefits." *Id.* at 513. Disability is a temporary income benefit and "results from any reduction in wage earning capacity." *Id.* Stated differently, disability is not designed to compensate an employee for "lost earnings or for the injury itself." *See Aiken v. Texas Employers' Ins. Ass'n*, 737 S.W.2d 143, 145 (Tex. App.—Eastland 1987, no writ); *see also Warren v. Industrial Comm'n*, 39 P.3d 534, 537 (Ariz. Ct. App. 2002, no pet.) (explaining that if claimant was totally disabled from working in job in which he was injured but retains capacity to perform suitable work that pays equivalent salary, "then the worker has no loss of earning capacity despite the total disability to perform the date of injury work"). Under the governing statutory provisions, the concepts of "impairment" and "disability"

4

are not interchangeable and refer to different concepts. *Insurance Co. of Pa. v. Muro*, 347 S.W.3d 268, 275 (Tex. 2011).

Because the plaintiff has the burden of proof, one would expect that a claimant would have to prove a reduction in earning capacity by presenting evidence establishing all of the elements of the statutory definition for "disability" in order to obtain recovery. *See* Tex. Lab. Code Ann. § 401.011(16). In other words, in order to meet the burden, there must be evidence supporting a determination (1) that a claimant is unable to keep or retain employment (2) that paid pre-injury wages and (3) that this inability was caused by the injury that he sustained. *Id.* Moreover, in light of the fact that the statutory definition is composed of several distinct elements, it seems logical to assume that any or all of those elements may be in dispute in a particular case. *See Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 518 (Tex. 2007).

In fact, courts in other states interpreting similarly worded statutes have expounded upon the burden imposed on claimants seeking disability benefits as well as the types of evidence that should be submitted. For example, in North Carolina, the workers' compensation statute specifies that the term "disability" means "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2 (2011). When interpreting this provision, courts have explained that a plaintiff seeking to demonstrate a disability has the burden of proving that after sustaining an injury he is incapable of earning the same wages that he earned before the injury in his prior job or in "any other employment" and that the inability to earn is caused by the injury that he sustained. *Bridwell v. Golden Corral Steak House*, 561 S.E.2d 298, 301 (N.C. App. 2002, pet. denied). Regarding the evidence that should be admitted,

5

the same court explained that the employee may satisfy the burden of proof by submitting the following types of evidence: (1) evidence showing that he is physically or mentally incapable of working in any job as a result of the injury; (2) evidence that he is capable of some work and has undertaken reasonable efforts to find employment but has been unsuccessful in his efforts; (3) evidence that he is capable of some type of work, but it would be futile to attempt to find another job due to preexisting conditions; or (4) evidence that he found another job, but the new job pays wages that are lower than what he earned prior to the injury. *Id.* Similarly, the workers' compensation statute in Nebraska expresses disability in terms of the "earning power of the employee" after an injury. Neb. Rev. Stat. Ann. § 48-121 (LexisNexis 2012). When interpreting this provision, courts in Nebraska have identified factors to be considered when making a disability determination, including the ability to earn a wage, "eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work in which engaged." *Sidel v. Travelers Ins. Co.*, 288 N.W.2d 482, 485 (Neb. 1980); *see Guerra v. IBP, Inc.*, No. A-02-711, 2003 Neb. App. LEXIS 77 (Neb. Ct. App. Mar. 25, 2003, no pet.).

Unlike the out-of-state cases described above, Texas cases applying the old workers' compensation statute are sprinkled with statements such as "[t]here is no fixed rule of evidence by which to prove disability. The factfinder must determine the extent and duration of a disability based on all the pertinent facts." *See City of Garland v. Kuerbitz*, No. 05-97-01336-CV, 1999 Tex. App. LEXIS 8468, at *7 (Tex. App.—Dallas Nov. 12, 1999, no pet.); *Farmland Mut. Ins. Co. v. Alvarez*, 803 S.W.2d 841, 847 (Tex. App.—Corpus Christi 1991, no writ). Although those statements may correctly describe the jury's function under the old statute, they provide little guidance regarding

6

the types of evidence that should be submitted to satisfy the statutory elements of the current law or the manner in which disability determinations should be reviewed. Moreover, cases interpreting the most recent version of the workers' compensation statutes have not provided guidance regarding the type of information that a plaintiff must submit to satisfy his burden of proving the elements of the statutory definition. *But see Dickey v. Travelers Ins. Co.*, 356 S.W.2d 156, 158 (Tex. Civ. App.—Houston 1962, writ ref'd n.r.e.) (applying former statute and upholding jury's verdict in favor of claimant but noting that claimant provided no evidence concerning other jobs that he could do or how much they might pay).

In this case, it is not necessary to exhaustively describe the factors to consider when reviewing a disability determination or to identify the types of information that should be submitted as proof of a disability; rather, it suffices to say that by specifying a definition for disability, the legislature has required disability claimants to provide some evidence upon which a disability determination (diminished earning capacity) may be made. *See* Tex. Lab. Code Ann. § 401.011(16); *see also* Tex. Gov't Code Ann. § 311.021(2) (West 2005) (explaining that courts must presume that when legislature enacted statute, it intended for entire statute to be effective). In other words, claimants may not simply present evidence showing that an injury has occurred because the purpose of disability income is not to compensate a claimant for an injury that he sustained. Rather, a claimant must present evidence showing that he is unable to keep or retain employment that paid his pre-injury wages and that this inability was caused by the compensable injury that he sustained. *See* Tex. Lab. Code Ann. § 401.011(16).

As evidenced by the fact that Esparza was able to perform light duty work for approximately a month after sustaining an injury, this is not a case in which a claimant produced

7

evidence demonstrating a complete and total incapacity, which might compel a determination that the claimant was unable to engage in any type of employment. Consequently, I believe that Esparza had the burden of providing evidence upon which the jury could determine that he was unable to obtain or retain employment at his pre-injury wages because of his injury. In this case, Esparza testified regarding the symptoms that he was experiencing as a result of the injury and submitted extensive medical evidence detailing the injury that he sustained. For example, he described significant pain, numbness, and tingling in his hands and arms in the months after he sustained an injury at work. In fact, he affirmatively answered a question asking whether in May 2004 he was still experiencing pain significant enough that he needed to switch hands when talking on the phone. When describing his evaluation by Dr. Jacqueline Kelly, who reviewed some of the medical records submitted to the Commission, Esparza testified that he told her that just prior to trial he was still having trouble lifting objects, opening jars, and performing other tasks and that he believed that his hands and arms will never fully recover. Esparza also testified that when the City took him off light duty, he stopped going to work and filed for leave under the Family and Medical Leave Act because of the symptoms that he was experiencing.[2] *See* 29 U.S.C.A. §§ 2601-2654 (West 2009 & Supp. 2011) (allowing applicant to obtain up to twelve weeks of unpaid leave for health problems).

However, he provided no evidence that he sought employment during the period of disability found by the jury[3] either before or after his leave expired and, accordingly, provided no

---

[2] In their opinion, the majority refers to various forms signed by several of Esparza's treating physicians that stated that he was released for light duty, that his work schedule should be limited, and that he should not return to his old job until late 2003. Although these documents demonstrate that Esparza was continuing to feel symptoms well after the date that he was injured, they do not demonstrate that Esparza was unable to obtain employment that would pay him his pre-injury wages.

[3] During the trial, Esparza testified that he began applying for jobs in July 2004, but that was five months after the end of the disability period found by the jury.

8

information regarding the amount of compensation that he might expect in another job. Moreover, Esparza did not testify that the injuries that he sustained prevented him from engaging in any type of employment; on the contrary, he expressed that he only stopped working because the City decided to no longer accommodate his light duty request. In addition, Esparza provided no testimony indicating that he experienced any difficulty performing the light duty tasks assigned by the City. He also testified that he felt that he could have returned to work doing his old job in January 2004 if the City had provided him with gloves to diminish the vibratory effects of using chainsaws. Further, Esparza stated that he told his supervisor that even if he could not perform all of the tasks of his prior job, he could do other kinds of work, including pulling brush.[4]

During the trial, both Esparza and Dr. Kelly did make a few statements regarding his ability to work during the disability period that he was requesting, but those conclusory statements were not supported by evidence. *See Coastal Transp. Co. v. Crown Central Petrol. Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) (stating that conclusory or speculative opinions are not evidence because they do not make existence of material fact more or less probable). First, Esparza testified that between July 2003 and September 2004, he was not "ever able to do any work" for which he would have earned the same wage that he had been receiving prior to his injury. However, as mentioned above, Esparza failed to provide any evidence regarding any jobs that he applied for or regarding why his injury rendered him unable to engage in any type of employment. Esparza also testified that his hands and arms did not sufficiently recover to allow him to return to work until September or October 2004 and that the injury he sustained in June 2003 was the reason that he did

_____

[4] In his testimony, Esparza admitted that in May 2004, his injuries were not preventing him from seeking employment and that he could have looked for another job if he had wanted to.

9

not work for over a year. However, the context of those statements reveals that Esparza was talking about his forestry technician job and was not commenting on all possible types of employment. Moreover, Esparza had previously testified that by the end of 2003 or early 2004, he had recovered enough to return back to his forestry technician position.

In addition, Dr. Kelly admitted that prior to obtaining all of the relevant medical records, she made a "partial determination" that Esparza had suffered an on-the-job injury and had been disabled as a result of the injury; however, Dr. Kelly failed to provide any explanation regarding her assessment of Esparza's earning capacity. Later in her testimony, when answering a question regarding what kind of work would be available to Esparza in light of the facts that he does not have a high school degree and has been working for the forestry department for 20 years, Dr. Kelly explained that his options were "limited." As an initial matter, it is not entirely clear to me that Esparza's educational level and lengthy employment with the City have any bearing upon the disability determination because that inquiry involves an evaluation of a reduction in earning capacity attributable to an injury. In any event, after expressing her belief that Esparza's options were limited, Dr. Kelly went on to explain that Esparza "could work in an auto parts store, assuming that type of work would be available to him."[5]

---

[5] In his brief, Esparza insists that the City's objections to the lack of evidence showing efforts to obtain other employment or otherwise demonstrating a reduction in earning capacity must fail because he was experiencing pain and undergoing additional testing during the period of time at issue. As mentioned above, a disability determination must be based on evidence showing a reduction in earning capacity. Accordingly, an assertion that a claimant was experiencing pain, without more, will not obviate the need for evidence upon which an assessment of earning capacity may be made.

In attempting to excuse the absence of evidence regarding a reduction in earning capacity, Esparza also relies on a stacking set of limitations that he argues demonstrate his unemployability. After mentioning his lengthy work history with the City and stating that he does not have a high

In light of the preceding, I would conclude that the evidence presented as a whole would not allow reasonable and fair-minded people to differ in their conclusions as to whether Esparza was disabled because there is no more than a scintilla of evidence regarding the elements of the statutory definition for "disability." *See* Tex. Lab. Code Ann. § 401.011(16). Although the evidence may in fact show that Esparza suffered an injury, no evidence was introduced showing that the alleged injury prevented Esparza from obtaining or retaining employment "at wages equivalent to the preinjury wage." *See id.* Accordingly, I believe that the evidence is legally insufficient to support the jury's disability determination.

For these reasons, I respectfully dissent to the portion of the majority's opinion concluding that the jury's disability determination is supported by legally sufficient evidence.

_____

David Puryear, Justice

Before Justices Puryear, Rose, and Goodwin

Filed: August 10, 2012

---

school diploma, Esparza urges that his work experience and education necessarily limited him to seeking jobs that were similar in nature to his forestry technician job. Then, Esparza categorically dismisses those types of jobs as potential sources of employment on the ground that he would be unable to fulfill the requirements of those jobs. In other words, Esparza argues that he would have been unable to perform the work for the limited set of jobs that he was qualified for. Accordingly, Esparza contends that he was not obligated to provide evidence regarding efforts to seek other employment. As I mentioned earlier, it is not entirely clear that work experience and education are relevant considerations in a disability determination. In any event, when making this argument Esparza makes no reference to evidence in the record or to any relevant legal authority. These kinds of unsubstantiated assumptions cannot serve as substitutes for evidence upon which a determination regarding earning capacity may be made.

11