TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-10-00260-CV




In re State of Texas




ORIGINAL PROCEEDING FROM BELL COUNTY


 
O P I N I O N

                        In November 2009, the State, “acting by and through” the Texas Transportation
Commission (the “Commission”) and the Texas Department of Transportation (the “Department”)
(cumulatively the “State”), initiated an eminent domain proceeding in order to acquire property from
James and Rosemary LeGuin (“the LeGuins”). After the State initiated the proceeding, the LeGuins
asked the State to disclose various documents related to the value of the property to be condemned
and to construction plans for the property. The State objected to the request, but the trial court
ordered the State to produce the requested documents. In response to the trial court’s order, the State
filed a petition for writ of mandamus asking this Court to vacate the trial court’s order. We will
conditionally grant the writ. 
 
STATUTORY FRAMEWORK
                        Before addressing the issues presented in this mandamus, some preliminary
background regarding eminent domain proceedings is helpful. “The eminent domain statute is
designed to provide a speedy and fair assessment of damages.” Gulf Energy Pipeline Co. v. Garcia,
884 S.W.2d 821, 823 (Tex. App.—San Antonio 1994, orig. proceeding); see In re State, 85 S.W.3d
871, 876 (Tex. App.—Tyler 2002, orig. proceeding) (op. on reh’g). Under current law, the eminent
domain process occurs in two phases. Blasingame v. Krueger, 800 S.W.2d 391, 392
(Tex. App.—Houston [14th Dist.] 1990, orig. proceeding). The first phase is administrative in
nature. After an eminent domain proceeding is filed in a trial court, Tex. Prop. Code Ann. § 21.012
(West Supp. 2009), the trial court appoints three special commissioners who “assess the damages
of the owner of the property being condemned,” id. § 21.014 (West 2004); see id. § 21.042
(West Supp. 2009), and “file an award which, in their opinion, reflects the value of the sought-after
land,” Amason v. Natural Gas Pipeline Co., 682 S.W.2d 240, 242 (Tex. 1984). The administrative
phase is designed to provide “a means to quickly award damages . . . without the delays that occur
in court proceedings.” In re State, 85 S.W.3d at 876; see also PR Investments & Specialty Retailers,
Inc. v. State, 251 S.W.3d 472, 478 (Tex. 2008) (explaining that administrative phase provides parties
with opportunity to present their case in “streamlined fashion and to resolve their differences”
without “the burdens of a trial”). In other words, the “purpose of the administrative phase is to
provide the parties an opportunity for a prompt resolution of the case with a minimum of expense.” 
City of McKinney v. Eldorado Park, Ltd., 206 S.W.3d 185, 196 (Tex. App.—Eastland 2006,
pet. denied). During this phase, the trial court only has “jurisdiction to appoint the commissioners,
receive their opinion as to value, and render judgment based upon the commissioners’ award.” 
Gulf Energy Pipeline Co., 884 S.W.2d at 822. The trial court has no authority to control the timing
of or otherwise interfere with the commissioners’ hearing. Id. at 823. 
                         If the property owner or the condemning authority is dissatisfied with the
commissioners’ award, either may file objections to the commissioners’ findings in the trial court. 
Tex. Prop. Code Ann. § 21.018 (West 2004). Once those objections are filed, the second phase goes
into effect. Blasingame, 800 S.W.2d at 393. In this phase, the commissioners’ award is vacated, id.,
and the administrative phase converts into a normal cause to be tried “in the same manner as other
civil causes” in the trial court, Tex. Prop. Code Ann. § 21.018(b). See also In re State, 85 S.W.3d
at 877 (stating that objections to commissioners’ findings entirely wipe out commissioners’ award
and prohibit any judgment based on that award). It is only after a party files objections that the trial
court obtains full jurisdiction over the case. State v. Blackstock, 879 S.W.2d 125, 129
(Tex. App.—Houston [14th Dist.] 1994, writ denied). In other words, the trial court does not gain
jurisdiction “as a court . . . until the objections” are filed. Grant v. United Gas Pipe Line Co.,
457 S.W.2d 315, 319 (Tex. Civ. App.—Corpus Christi 1970, writ ref’d n.r.e.). 

BACKGROUND
                        In this case, the State sought to acquire property from the LeGuins and initiated an
eminent domain proceeding. The State sought the property in order to expand IH-35. After the State
initiated the eminent domain proceeding, the trial court appointed three “special commissioners to
assess the damages to the owner of the property being condemned,” see Tex. Prop. Code Ann.
§ 21.014, and a commissioner’s hearing was set for June 2010, id. § 21.015 (West 2004). 
                        Prior to the hearing, the LeGuins filed an extensive request for information, asking
the State to produce the following types of documents prior to the hearing:
 
                        •          appraisals, value studies, and reports concerning the property to be
condemned
 
                        •          the work file used by an appraiser to make an initial valuation
 
                        •          design plans and documents showing details of the construction to be
conducted on the property
 
                        •          documents that are relevant to the market value of the property to be
condemned and to the value of the remainder of the LeGuins’
property before and after the taking
 
                        •          documents relating to any regulation or rule that affects the value of
the LeGuins’ property
 
 
In filing this request, the LeGuins contended that section 21.024 of the property code allowed the
disclosure sought. See Tex. Prop. Code Ann. § 21.024 (West Supp. 2009) (covering “Production
of Information by Certain Entities Considered Critical Infrastructure”). In response to the request,
the State filed various objections arguing that the property code provision does not apply to the State,
the Commission, or the Department. Shortly thereafter, the LeGuins filed a motion to compel the
release of the information requested. 
                        After the LeGuins filed their motion to compel, a hearing was scheduled with the trial
court. Ultimately, the trial court granted the LeGuins’ motion to compel and ordered the State to
produce the documents requested. After the trial court granted the motion to compel, the State filed
this petition for writ of mandamus. 

DISCUSSION
                        In its petition, the State asserts that mandamus is proper because “the trial court
abused its discretion in ordering the State to produce information pursuant to a request under Texas
Property Code section 21.024, and the State has no adequate remedy by appeal.” See In re Columbia
Med. Center, 290 S.W.3d 204, 207 (Tex. 2009) (explaining that mandamus may properly issue to
“correct a clear abuse of discretion or the violation of a duty imposed by law” when “an adequate
remedy by appeal does not exist”).

There is No Adequate Remedy
                        In its petition, the State contends that mandamus is warranted in this case because it
will have no adequate remedy if it is required to disclose the information sought. The LeGuins, on
the other hand, argue that mandamus is inappropriate because there is an adequate remedy by appeal. 
Specifically, the LeGuins assert that because the parties to a special commissioners’ condemnation
proceeding are entitled to a de novo appeal in the trial court, see Tex. Prop. Code Ann. § 21.018, the
State has an adequate remedy by appeal. Further, the LeGuins insist that the State previously argued
that the de novo appeal provided an adequate appellate remedy and should, therefore, be prohibited
from taking a contrary position in this case. 
                        In determining whether there is an adequate remedy by appeal, courts “must consider
whether mandamus will preserve important substantive and procedural rights from impairment or
loss.” In re Team Rocket, L.P., 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). There “is no
adequate remedy by appeal” when the “parties are in danger of permanently losing substantial
rights.” Gulf Energy Pipeline Co., 884 S.W.2d at 824. Further, courts may consider whether
mandamus will “allow the appellate courts to give needed and helpful direction to the law that would
otherwise prove elusive in appeals from final judgments.” In re Prudential Ins. Co., 148 S.W.3d
124, 136 (Tex. 2004). For example, questions of law that are likely to recur yet elude appellate
review may be addressed through mandamus. Id. at 138. In addition, courts may determine whether
affording relief through mandamus will “spare private parties and the public the time and money
utterly wasted enduring eventual reversal of improperly conducted proceedings.” Id. 
                        The issue presented in this mandamus is a question of law: whether section 21.024
of the property code requires the State to disclose certain information during the administrative
portion of an eminent domain proceeding. See Tex. Prop. Code Ann. § 21.024. Further, the issue
is likely to recur as evidenced by the fact that there is currently another mandamus pending with this
Court addressing the very same issue. See In re State, No. 03-10-00360-CV. Moreover, the issue
bears upon a substantial right. The right to a quick resolution during the administrative phase
without the delays that are found in court proceedings has been characterized as “a substantial right,”
In re State, 85 S.W.3d at 876-77, that belongs to entities with the power of eminent domain, see Gulf
Energy Pipeline Co., 884 S.W.2d at 824. See also PR Invs. & Specialty Retailers, Inc., 251 S.W.3d
at 478 (stating that pretrial settlements through administrative proceedings should be encouraged). 
                        If the State is correct, then section 21.024 does not apply, and requiring the State to
submit to extensive discovery requests will interfere with the substantial right to obtain a quick
assessment of damages without the expense and delays of traditional court proceedings. Moreover,
although the LeGuins insist that the right to a trial de novo in the trial court after the commissioners’
hearing provides an adequate remedy for any error, it is not readily apparent how the benefit of a trial
de novo could possibly address or undo the deprivation of the right to an unencumbered and
expedited administrative hearing. Cf. In re Jorden, 249 S.W.3d 416, 419-20 (Tex. 2008) (orig.
proceeding) (pertaining to availability of “presuit depositions” and noting that if relators’ claim is
true and law prohibits those depositions, then scheduled depositions cannot be “untaken”). In other
words, the trial court would have no “mechanism by which that right, once lost, [could] be
recovered.” See In re State, 85 S.W.3d at 877. 
                        Similarly, it seems unlikely that this issue would ever be addressed during appellate
review. If the State obtains a favorable result in a trial de novo, it will likely be precluded from
appealing the trial court’s judgment or raising the disclosure issue on appeal. If the State does not
obtain a favorable result and seeks to appeal the trial court’s judgment, it is not clear on what basis
the issue could be addressed because allowing discovery “a little too early” is unlikely to lead to an
improper judgment. See In re Jorden, 249 S.W.3d at 419. Regardless, even assuming that an
appellate court could ever address the issue through a traditional appeal, the right to the quick
administrative hearing would still have been lost. 
                        As discussed above, the LeGuins contend that even if mandamus might otherwise be
appropriate, this Court should still deny relief because the State has previously asserted that the right
to a trial de novo after the commissioners’ hearing will cure any error occurring in the
commissioners’ hearing. As support for their assertions, the LeGuins cite to Blasingame v. Krueger. 
In that case, the property owners sought to subpoena various State employees, but the trial court
granted a motion to quash filed by the State. 800 S.W.2d at 392. After the trial court granted the
motion, the owners filed a mandamus petition. In their response to the petition, the State argued that
mandamus relief should be denied because the ability to have a trial de novo after the
commissioners’ hearing provided the owners with an adequate remedy by appeal. The appellate
court agreed and determined that the trial de novo will allow the owners to obtain the information
sought through “‘regular’ discovery in accordance with the rules of civil procedure.” Id. at 394. 
                        Although the LeGuins correctly point out that the State did previously argue that
the right to a de novo trial after a commissioners’ hearing provided an adequate remedy, the
situation presented in this mandamus proceeding is not analogous to that found in Blasingame. 
Blasingame involved an order prohibiting the disclosure of information during a commissioners’
hearing, but this case involves an order compelling the release of information. Any error resulting
from the failure to provide information could actually be cured by the disclosure of that information
during a subsequent trial, but as discussed above, any potential harm resulting from the
improper disclosure of information during a commissioners’ hearing cannot be undone through a
subsequent trial de novo.


 
                        For these reasons, we conclude that the State has no adequate remedy by appeal and
that the failure to employ mandamus when this type of substantial right is placed in jeopardy “would
vitiate and render illusory the right to a rapid, inexpensive alternative to traditional litigation.” Gulf
Energy Pipeline Co., 884 S.W.2d at 824; see In re Prudential Ins. Co., 148 S.W.3d at 138.

The Trial Court Abused its Discretion
                        Having determined that there is no adequate remedy available to the State if the
State’s assertions are correct, we must now determine whether the trial court abused its discretion
by ordering the State to disclose the information sought by the LeGuins under section 21.024 of the
property code. See Tex. Prop. Code Ann. § 21.024. A court is said to abuse its discretion when
it acts “without reference to any guiding rules and principles,” Quixtar Inc. v. Signature Mgmt.
Team, LLC, 315 S.W.3d 28, 32 (Tex. 2010), or acts in “an arbitrary or unreasonable manner,”
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). Regarding factual
determinations, appellate courts apply a deferential standard and will only disturb the trial court’s
determination if “it is shown to be arbitrary and unreasonable.” In re Bustamante, 104 S.W.3d 704,
705 (Tex. App.—El Paso 2003, orig. proceeding). However, regarding the resolution of legal
questions, appellate courts are “much less deferential” because a trial court has no discretion to
determine what the law is. Id. Accordingly, a trial court “abuses its discretion” when it fails to
analyze or correctly apply the law. Id. 
                        In its petition, the State asserts that section 21.024 does not apply to the State, the
Commission, or the Department. The issue presented involves a question of statutory construction. 
When presented with an issue of statutory construction, the chief concern “is to ascertain and give
effect to the Legislature’s intent.” Klein v. Hernandez, 315 S.W.3d 1, 3-4 (Tex. 2010). In making
this determination, courts should look to the plain meaning of the words used in the statute. See
Fireman’s Fund County Mut. Ins. Co. v. Hidi, 13 S.W.3d 767, 768-69 (Tex. 2000). We presume that
every word was deliberately chosen and that excluded words were left out on purpose. USA Waste
Servs. of Houston, Inc. v. Strayhorn, 150 S.W.3d 491, 494 (Tex. App.—Austin 2004, pet. denied). 
We also “presume that the Legislature intended all provisions of a statute to be effective, and that
it intended a just and reasonable result.” City of Dallas v. Abbott, 304 S.W.3d 380, 384 (Tex. 2010). 
When determining legislative intent, the entire act, not isolated portions, must be considered. 
Jones v. Fowler, 969 S.W.2d 429, 432 (Tex. 1998). We may also consider the “object sought to be
attained” by enacting the statute, the “circumstances under which the statute was enacted,” and the
“consequences of a particular construction.” Tex. Gov’t Code Ann. § 311.023 (West 2005). 
                        As a preliminary matter, we note as described above that the administrative phase was
originally designed to provide a quick, inexpensive, and unencumbered mechanism by which the
damages to a landowner may be determined. See In re State, 85 S.W.3d at 876; Gulf Energy
Pipeline Co., 884 S.W.2d at 824. We also note that the LeGuins’ assertions are in direct conflict
with that statutory scheme. See Gulf Energy Pipeline Co., 884 S.W.2d at 822-23. In fact, despite
the legislative mandate denying the trial court an active role in the administrative phase of an
eminent domain proceeding and requiring that commissioners set and conduct a hearing “promptly”
and “at the earliest practical time,” see Tex. Prop. Code Ann. § 21.015, the LeGuins essentially ask
this Court to conclude that a large proportion of (if not all) eminent domain proceedings initiated by
a governmental entity are subject to the delays inherent in scheduling hearings before a trial court,
see Peak Pipeline Corp. v. Norton, 629 S.W.2d 185, 187 (Tex. App.—Tyler 1982, no writ) (stating
that eminent domain “statutory authority and the legislative intent from which it emanates,
contemplates the utilization of special commissioners to accomplish the goal of a speedy and fair
assessment of damages”); City of Houston v. Plantation Land Co., 440 S.W.2d 691, 695 (Tex. Civ.
App.—Houston [14th Dist.] 1969, writ ref’d n.r.e.) (explaining that legislature intended to establish
“expeditious procedure”). Furthermore, construing section 21.024 as applying to the administrative
phase would necessarily undermine the intent of the legislature by adding expense to the
administrative phase.


 While the legislature is free to override its prior intent through subsequent
enactments, the breadth of the departure suggested by the LeGuins in the absence of language
expressly disavowing the prior intent gives us pause. 
                        Moreover, construing section 21.024 as applying to the State is inconsistent with the
very language of that provision. That provision requires certain condemning authorities to release
information “related to the taking of [a] person’s private property by the entity through the use of
eminent domain.” Id. § 21.024(a). Further, the provision explains that only “an entity which is
considered critical infrastructure and which is authorized by law to take private property through
the use of eminent domain is required to produce” the information described above. Id. (emphases
added). When describing what is meant by the phrase “critical infrastructure,” the code states that
“[a] utility, a common carrier, or a transporter of oil, gas, or the products of oil or gas is considered
to be within the definition of critical infrastructure under Section 421.001, Government Code.” Id. 
The government code specifies that “‘critical infrastructure’ includes all public or private assets,
systems, and functions vital to the security, governance, public health and safety, economy, or morale
of the state or the nation.” Tex. Gov’t Code Ann. § 421.001(2) (West 2005) (emphasis added). 
                        At first glance, the State and the Commission and the Department as governmental
agencies do not seem to fall under the government code’s definition of “critical infrastructure”
because they do not seem to readily qualify as “assets, systems, [or] functions.” See Tex. Gov’t
Code Ann. § 421.001(2). While they unquestionably may physically own, create, or maintain
“assets, systems, and functions” that would qualify as critical infrastructure, that does not necessarily
compel a conclusion that they themselves are critical infrastructure. That determination also seems
to comport with the commonly accepted definition of “infrastructure” as “the system of public works
of a country, state, or region.” See Merriam-Webster available at www.merriam-webster.com. 
Furthermore, the government code provision defining “critical infrastructure” has a separate and
distinct definition for “agency,” which would seem to more readily apply to the entities at issue. Id.
§ 421.001(1).


 Moreover, it is worth noting that nothing in the definition of “agency” indicates that
agencies are considered “critical infrastructure.” Id. 
                        This conclusion is supported by a later subsection in section 21.024, which references
a government code provision applying only to non-governmental entities. Subsection 21.024(i)
states that section 552.0037 of the government code “does not apply in relation to those entities
described in Subsection(a),” which are subject to the disclosure requirements at issue. Tex. Prop.
Code Ann. § 21.024(a), (i). Section 552.0037 of the government code is part of the Public
Information Act and specifies that non-governmental entities with the power to use “eminent
domain” are subject to the Act. Tex. Gov’t Code Ann. § 552.0037 (West Supp. 2009). Given that
the government code provision applies only to non-governmental entities and that the property code
exempts all of the entities described in subsection 21.024(a) from the requirements imposed by the
government code provision, the most logical resolution of those statutes leads to the conclusion that
subsection 21.024(a) covers non-governmental entities and, therefore, does not apply to the State,
the Commission, or the Department.


 This conclusion is further supported by the fact that when the
legislature previously decided to impose disclosure requirements on governmental entities in the
eminent domain context, it explicitly used the phrase “governmental entity.” See Tex. Prop. Code
Ann. § 21.0111 (West 2004) (requiring “governmental entity . . . that wants to acquire real property”
through eminent domain to disclose “existing appraisal reports” at time offer is made and before
administrative hearing). Had the legislature intended for section 21.024 to also apply to
governmental entities, it could have easily said so. 
                        Even assuming that the definition of “critical infrastructure” can be read broadly
enough to include the State, the Department, the Commission, and other governmental entities


 when
those entities are exercising eminent domain for the purpose of creating or maintaining critical
infrastructure such as a highway, section 21.024 provides a significant limitation to the types of
critical-infrastructure entities that are required to disclose information. Section 21.024 applies only
to those entities that are “authorized by law to take private property through the use of eminent
domain.” Tex. Prop. Code Ann. § 21.024(a) (emphasis added). The State is not authorized by law
to engage in eminent domain actions; rather, the State has an “inherent sovereign power of eminent
domain.” See City of Carrollton v. Singer, 232 S.W.3d 790, 796 (Tex. App.—Fort Worth 2007, pet.
denied). The Texas Constitution may limit the manner in which the power may be exercised, but it
does not bestow that power onto the State. Id.; Whittington v. City of Austin, 174 S.W.3d 889, 898
(Tex. App.—Austin 2005, pet. denied); see also Tex. Const. art. I, § 17 (imposing requirement that
property owner be given “adequate compensation” and that taking be done for “public use”). 
Similarly, the property code does not grant the power of eminent domain but instead provides “the
procedure for instituting an eminent domain proceeding.” Singer, 232 S.W.3d at 797; see Tex.
Transp. Code Ann. § 224.004(d) (West 1999) (explaining that property code “governs procedure for
the eminent domain proceeding”). 
                        Although the State has the inherent power to engage in eminent domain, the State
uses this power by delegating its authority to the Department and other agencies. State v.
Northborough Ctr., Inc., 987 S.W.2d 187, 189 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)
(explaining that in eminent domain proceeding, State acts “through the Texas Department of
Transportation”). In other words, when the Department engages in eminent domain, it is exercising
the State’s inherent sovereign right rather than employing a right “authorized by law.” Because the
Commission “governs” the Department, Tex. Transp. Code Ann. § 201.201 (West 1999), it is
similarly empowered to engage in eminent domain in “the name of the [S]tate” and on “behalf of the
[S]tate,” Tex. Transp. Code Ann. §§ 203.051 (West 1999), 224.004 (West 1999). 
                        In light of the fact that the State, the Department, and the Commission are not entities
that have been “authorized by law” to engage in eminent domain actions but are instead entities that
either have or express an inherent, sovereign power of eminent domain, we must conclude that they
are not governed by the requirements of section 21.024 of the property code. Because the trial
court determined that section 21.024 applied and required the discosures sought by the LeGuins, we
conclude that the trial court abused its discretion. See In re Bustamante, 104 S.W.3d at 705
(explaining that trial courts abuse their discretion when they incorrectly analyze or apply
governing law). 

CONCLUSION
                        Having concluded that the district court abused its discretion by determining that
section 21.024 applied and having determined that the State does not have an adequate remedy, we
conditionally grant the State’s petition for writ of mandamus and direct the trial court to vacate its
order requiring disclosure of the five categories of documents sought by the LeGuins. We are
confident that the trial court will comply, and our writ will only issue if it does not.


 
 
                                                                        __________________________________________
                                                                        David Puryear, Justice
Before Chief Justice Jones, Justices Puryear and Pemberton
Filed: November 12, 2010