# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00515-CV

**USA Waste Services of Houston, Inc., Appellant**

**v.**

**Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. GN003453, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING**

## O P I N I O N

In this tax protest suit, USA Waste Services of Houston, Inc. ("USA") appeals from the grant of summary judgment in favor of Carole Keeton Strayhorn, Comptroller of Public Accounts, and Greg Abbott, Attorney General of the State of Texas (collectively, "Comptroller").[1] In one issue, USA, a waste removal company, contends that it is entitled to a sales tax refund under the sale-for-resale exemption. USA seeks a refund of sales taxes paid on steam cleaning services that USA ordered after spilling waste on customers' property. For the reasons set forth below, we affirm the judgment of the district court.

---

[1] The Comptroller and the Attorney General are statutory defendants in tax protest suits. *See* Tex. Tax Code Ann. § 112.151(b) (West 2002). Because their interests do not diverge in this case, for convenience we will refer to them collectively as "Comptroller."

# BACKGROUND

During the tax audit period for this case, January 1, 1994 through March 31, 1997, USA entered into contracts with commercial customers to remove their waste. In the course of the waste removal, USA from time to time spilled liquid onto a customer's property, either from a trash receptacle or from a USA truck. When a customer called to complain about a spill, USA hired AA Mobile Steam Cleaning to clean up the spill. USA hired AA because it did not own steam cleaning equipment. All of the steam cleaning relevant to this case occurred on the property of USA customers.

After an audit of USA's sales tax reports for January 1, 1994 through March 31, 1997, the Comptroller assessed sales tax for USA's purchases of steam cleaning services performed on customers' property. USA paid the sales tax under protest, then filed suit in a Travis County district court. *See* Tex. Tax Code Ann. § 112.052 (West 2002) (suit after payment under protest).[2] In its suit, USA claimed entitlement to a refund of $5,570.06 in sales taxes because it resold the steam cleaning services to its customers. *See id.* §§ 151.006(1) (West 2002) (definition of "sale for resale"), .302(a) (West 2002) (sale-for-resale exemption). Both parties filed traditional motions for summary judgment based on statutory interpretation. USA argued that it was entitled to the sale-for-resale exemption and the Comptroller argued no entitlement. After a hearing, the district court rendered final judgment, granting the Comptroller's motion for summary judgment and denying USA's motion. In one issue, USA contends that because it is entitled to the sale-for-resale

---

[2] Because there have been no material revisions to the relevant provisions of the tax code since the audit period, we will refer to the current code for convenience.

exemption for the steam cleaning services, the district court erred in granting the Comptroller's motion for summary judgment and denying its own.

## STANDARD OF REVIEW

### *Summary Judgment*

The standards for review of a traditional summary judgment are well established: the movant must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). Here, the parties rely on statutory provisions and administrative rules to support their entitlement to summary judgment. In general, matters of statutory construction are questions of law rather than issues of fact. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000).

Generally, a party cannot appeal the denial of a motion for summary judgment because it is an interlocutory order and thus not appealable. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). However, when both parties move for summary judgment and the district court grants one motion and denies the other, the unsuccessful party may appeal both the prevailing party's motion and the denial of its own. *See Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996). We review the summary judgment evidence presented by both sides, determine all questions presented, and render such judgment as the trial court should have rendered. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). We review the district court's decision to grant summary judgment *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994).

***Statutory Construction***

Because our analysis involves interpretation of statutory provisions and administrative rules, we employ well-settled principles of statutory construction. Statutory construction is a question of law, which we review *de novo*. *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002). We must ascertain and give effect to the legislature's intent for the provision we are construing. *See Fleming Foods v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994); *Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777, 780 (Tex. 1974). The legislature's intent is determined by reading the language used in the particular statute and construing the statute in its entirety. *See In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex. 1998); *Taylor v. Firemen's & Policemen's Civil Serv. Comm'n*, 616 S.W.2d 187, 190 (Tex. 1981). We read every word, phrase, and expression in a statute as if it were deliberately chosen, and presume the words excluded from the statute are done so purposefully. *See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied); *City of Austin v. Quick*, 930 S.W.2d 678, 687 (Tex. App.—Austin 1996) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)), *aff'd*, 7 S.W.3d 109 (Tex. 1999); *see also* 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.25 (6th ed. 2000) (stating that there is generally an inference that omissions from a statute are intentional).

Furthermore, we give serious consideration to an agency's construction of a statute, as long as the construction is reasonable and does not contradict the plain language of the statute. *Continental Cas. Co. v. Downs*, 81 S.W.3d 803, 807 (Tex. 2002) (citing *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993)). We recognize that the legislature intends an agency created to centralize expertise in a certain regulatory area "be given a large degree of latitude in the

methods it uses to accomplish its regulatory function." *Moore*, 845 S.W.2d at 823. Courts, however, "do not defer to administrative interpretation in regard to questions which do not lie within administrative expertise, or deal with a nontechnical question of law." *Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.) (quoting 2B Singer, *supra* § 49.04, at 23-24).

We construe the text of an administrative rule under the same principles as if it were a statute. *Phillips Petroleum Co. v. Texas Comm'n on Envtl. Quality*, 121 S.W.3d 502, 507 (Tex. App.—Austin 2003, no pet.) (citing *Texas Gen. Indem. Co. v. Texas Workers' Comp. Comm'n*, 36 S.W.3d 635, 641 (Tex. App.—Austin 2000, no pet.)). We bear in mind that an administrative agency has the power to interpret its own rules, and its interpretation is entitled to great weight and deference. *Id.* The agency's construction of its rule is controlling unless it is plainly erroneous or inconsistent. *Id.*

## ANALYSIS

USA seeks a sales tax refund under the "sale for resale" provision of the tax code. The parties agree that the steam cleaning services are taxable but disagree about whether USA is responsible for paying the taxes. "The sale for resale of a taxable item is exempt from the taxes imposed by this chapter." Tex. Tax Code Ann. § 151.302(a). The purpose of the sale-for-resale exemption is to prevent double taxation. *Sharp v. Clearview Cable TV, Inc.*, 960 S.W.2d 424, 426 (Tex. App.—Austin 1998, pet. denied). "[T]ax exemptions are subject to strict construction since they are the antithesis of equality and uniformity." *Hilltop Village, Inc. v. Kerrville Indep. Sch. Dist.*, 426 S.W.2d 943, 948 (Tex. 1968); *see North Alamo Water Supply Corp. v. Willacy County Appraisal*

5

*Dist.*, 804 S.W.2d 894, 899 (Tex. 1991); *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 606 (Tex. App.—Austin 2000, pet. denied). "An exemption cannot be raised by implication, but must affirmatively appear, and all doubts are resolved in favor of the taxing authority and against the claimant." *Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 272 (Tex. 1979). Accordingly, the claimant has the burden of clearly demonstrating that it is entitled to the exemption. *Strayhorn v. Raytheon E-Systems, Inc.*, 101 S.W.3d 558, 565 (Tex. App.—Austin 2003, pet. denied) (citing *North Alamo Water Supply*, 804 S.W.2d at 899).

A "sale for resale" is a sale of

> tangible personal property or a taxable service to a purchaser who acquires the property or service for the purpose of reselling it . . . in the normal course of business in the form or condition in which it is acquired or as an attachment to or integral part of other tangible personal property or taxable service.

Tex. Tax Code Ann. § 151.006(1). Here, USA claims a sale-for-resale exemption of a taxable service. Specifically, the steam cleaning company provided grounds cleaning, which is a real property service under the Comptroller's rules. 34 Tex. Admin. Code § 3.356(a)(7) (2003). A real property service may be eligible for a sale-for-resale exemption if "the buyer intends to transfer the service as an integral part of a taxable service." *Id.* § 3.356(c)(2) (2003). A service is considered to be an integral part of a taxable service "if the service purchased is *essential* to the performance of the taxable service and *without which the taxable service could not be rendered*." *Id.* (emphasis added).

USA argues that the steam cleaning is essential to the performance of its contractual obligation to remove all of its customers' waste, including waste that USA spills on the ground in

6

the process of removal. The Comptroller counters that USA does not qualify for the exemption because ordering steam cleaning to clean up a spill that USA causes is not essential to the performance of USA's waste removal service. It follows, the Comptroller urges, that USA is not required to hire a steam cleaner but chooses to do so to keep its customers happy after they complain about a spill. Thus, the Comptroller argues, USA's business decision does not constitute an essential part of its waste removal service.

USA relies on the summary judgment affidavit of Rosa Castro, who worked in USA's operations department during the audit period, to establish that the steam cleaning was an integral part of USA's service. Castro averred: "When USA emptied a customer's dumpsters or garbage cans, waste often spilled onto the property of its customers. It was practically impossible for USA to perform its waste removal services without spilling waste on its customers' property." She went on to state: "To remove the spilled waste and complete its job, USA had to steam clean the ground where the waste spilled. Since USA did not own steam cleaning equipment . . ., it hired AA to steam clean the areas."

Castro's affidavit, when read in isolation, conveys that USA ordered steam cleaning services in most instances in which it provided services or, in any event, every time that it spilled waste. However, in a response to a request for admission, USA admitted that it had a property steam cleaned only when it made a spill but denied that it ordered steam cleaning *every* time that it spilled waste. And counsel for USA stated in oral argument that in the process of USA's waste removal, waste "sometimes" fell onto the ground. Sharon Wilson, USA's safety manager, averred in an affidavit, attached to the Comptroller's motion, that USA "occasionally spills liquids" in the course

7

of waste removal. She went on to state that if a customer complains about a spill, she orders steam cleaning.[3]

USA argues that steam cleaning is an integral part of its waste removal service, but USA's own admission and statement from its safety manager establish that USA did not order steam cleaning every time that a spill occurred and that spills occurred only "sometimes." USA also asserts that it is entitled to the sale-for-resale exemption because the steam cleaning induces its customers to purchase USA's services. But we find no evidence in the record supporting this assertion. Quite the opposite, one can conclude from Wilson's affidavit that USA ordered steam cleaning only after a customer complained.

USA then argues that the Comptroller's construction of the resale exemption in this case is inconsistent with its construction of the exemption in other contexts. Included as an appendix to USA's brief is a letter from the Comptroller to an electrical subcontractor, who had asked whether its services to a general contractor were eligible for the sale-for-resale exemption. The Comptroller's response was that "your company may accept a resale certificate from ABC Company in lieu of tax on your remodeling charges *if ABC Company rebills your services to [the] project as a part of taxable remodeling services*."[4] USA asserts that its relationship with the steam cleaner is no different. However, other than the conclusory assertion in Castro's affidavit that "USA resold AA's steam cleaning services to USA's customers in the same form or condition in which they were

---

[3] At oral argument, counsel for USA stated that Wilson's affidavit covered a larger spectrum of spills because the affidavit was prepared for the administrative hearing before the Comptroller. Nevertheless, we consider the affidavit for all purposes.

[4] *See* Tex. Comptroller of Pub. Accounts, STAR System No. 9008L1045B01 (Aug. 31, 1990), *available at* http://aixtcp.cpa.state.tx.us/star/openrec2.html.

acquired," USA presented no evidence that it rebills its customers for the steam cleaning. Further, USA's waste removal contract with its customers contained no reference to steam cleaning.

USA additionally argues that because the Comptroller has granted sale-for-resale exemptions in instances in which the service or good involved was not essential to the overall service provided, USA is also entitled to the exemption. For example, the Comptroller allowed the exemption for shower slippers given to members of a country club and balloons given to customers at a Mexican restaurant.[5] The Comptroller granted the exemption for the shower slippers because "the items are considered transferred to the care, custody, and control of the members."[6] As to the balloons, the Comptroller stated that "when dealing with restaurants . . ., our agency's policy is somewhat broader than what you would think a 'sale for resale' is."[7] It allowed the exemption if customers received the balloons as part of their meal but disallowed the exemption for balloons purchased for decoration only.[8] The circumstances of those exemptions are not analogous to USA's situation. The shower slippers fell directly within the statutory definition of resale of tangible personal property as part of a service, *see* Tex. Tax Code Ann. § 151.302(b) (West 2002); the balloons were exempt because of the Comptroller's relaxed standard for restaurants.

---

[5] *See* Tex. Comptroller of Pub. Accounts, STAR System Nos. 200206156T (June 6, 2002) (balloons), 9207L1183D10 (July 17, 1992) (shower slippers), *available at* http://aixtcp.cpa. state.tx.us/star/openrec2.html.

[6] Tex. Comptroller of Pub. Accounts, STAR System No. 9207L1183D10.

[7] Tex. Comptroller of Pub. Accounts, STAR System No. 200206156T.

[8] *Id.*

USA also cites exemptions for third-party converter repair service ordered by a seller of cable service and flea killers added as part of a carpet cleaning service, both of which are cited in the Comptroller's rules as examples of integral parts of the services. *See* 34 Tex. Admin. Code §§ 3.310(d) (carpet cleaning), .313(d)(1) (cable converter repair) (2003). Unlike USA's waste spills, one can reasonably assume that the seller of the cable repair service did not cause the converter damage. As to the carpet cleaning, one can reasonably assume the customer received the flea killer as part of a package. Here, the steam cleaning occurred separately from USA's waste removal service, only after a customer complained. The steam cleaning is more analogous to a construction company paying for a plant that it accidentally backed over with one of its trucks. The replacement of the plant is not an integral part of its service but instead is intended to make the customer whole.

The facts demonstrate that USA seeks a sale-for-resale exemption for steam cleaning that it ordered after a customer called to complain that USA had spilled waste on the customer's property and not as the basis of any bargain between USA and the customer. On these facts, we conclude that the steam cleaning is not an integral part of the waste removal service that USA provides to its customers. *See* Tex. Tax Code Ann. § 151.006(1); 34 Tex. Admin. Code §3.356(c)(2). Instead, USA ordered the steam cleaning to keep the business of an existing customer and to make the customer whole. Construing the exemption against the taxpayer, as we must, *National Bancshares Corp.*, 584 S.W.2d at 272, we conclude that USA has not met the burden of clearly demonstrating that it is entitled to the exemption. *North Alamo Water Supply*, 804 S.W.2d at 899. Therefore, USA is not entitled to a refund under the sale-for-resale exemption for sales taxes paid on the steam cleaning services. We overrule USA's issue and affirm the district court's grant

10

of summary judgment in favor of the Comptroller and denial of USA's motion for summary judgment.

## CONCLUSION

The steam cleaning that USA ordered from a third party is a real property service under the Comptroller's rules. 34 Tex. Admin. Code § 3.356(a)(7). A real property service may be eligible for a sale-for-resale exemption if "the buyer intends to transfer the service as an integral part of a taxable service." *Id.* § 3.356(c)(2). Here, USA failed to demonstrate that steam cleaning ordered after USA spilled waste on a customer's property is an integral part of the waste removal service that USA provides to its customers. Accordingly, we hold that USA is not entitled to a refund under the sale-for-resale exemption for sales taxes paid on the steam cleaning services. We affirm the judgment of the district court.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   March 18, 2004

11