**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00297-CV**
_____

**ENTERGY TEXAS, INC., Appellant**

**V.**

**DAVID WOOLLEN AND WAYNE HILL, Appellees**

**On Appeal from the 172nd District Court
Jefferson County, Texas
Trial Cause No. E-202,405**

## MEMORANDUM OPINION

Appellant Entergy Texas, Inc. ("Entergy") complains that the trial court erred by denying its Motion for Summary Judgment because appellees, David Woollen and Wayne Hill (collectively referred to as "Plaintiffs"), violated Chapter 752 of the Texas Health and Safety Code and, as a result, their claims are extinguished due to circular indemnity. *See* Tex. Health & Safety Code Ann. §§ 752.001-.008. We reverse the trial court's Amended Order and remand to that court for further proceedings.

1

BACKGROUND

In September 2017, Plaintiffs were riding in a boat in a flooded area in Hardin County, Texas, and performing rescue operations during Hurricane Harvey when Woollen's boat struck an energized power line, causing Plaintiffs to be electrocuted and burned. Plaintiffs sued Entergy for negligence and alleged that Entergy owned and operated the power line and owed Plaintiffs a duty to protect and prevent injury during the Hurricane Harvey rescue operations. According to Plaintiffs, Entergy was aware of flooding in the area and breached its duty to Plaintiffs by failing to take proper precautions to protect rescuers from electrocution by de-energizing the power lines in the flooded areas. Plaintiffs alleged that Entergy's failures were the proximate cause of the accident and their injuries.

In its First Original Amended Answer to Plaintiffs' Original Petition, Entergy answered with affirmative defenses, including that Plaintiffs were guilty of acts and/or omissions constituting contributory negligence and negligence per se for violating the provisions of section 752.001, and following, of the Texas Health and Safety Code. *See id*. § 752.001. Entergy moved for summary judgment on its Chapter 752 affirmative defense and indemnity claim and argued that Plaintiffs violated Chapter 752 by placing themselves and the boat within six feet of a high voltage overhead power line without first arranging with Entergy to guard against possible contact. *See id.* §§ 752.001-.008. According to Entergy, Plaintiffs must

2

indemnify it for all liability it incurred as a result of Plaintiffs' electrical contacts, and due to circular indemnity, Plaintiffs' claims are extinguished as a matter of law.

Entergy argued that it is undisputed that Plaintiffs: (1) performed an activity where it was possible to bring themselves and the boat within six feet of an overhead high voltage power line without first making arrangements with Entergy to guard against contact; and (2) physically and electrically contacted a high voltage overhead power line while navigating through flood waters off the roadways, over private yards, and between houses. Entergy further argued that any alleged negligence on its part does not negate statutory indemnity. *See id.* § 752.008. To establish facts relevant to its Chapter 752 defense, Entergy attached relevant excerpts from Plaintiffs' depositions; the depositions of Dr. Peter Cass ("Cass") and Stephanie Cass, who were witnesses to the accident; and the affidavit of David Richard, Entergy's Senior Manager, Operations and Safety.

In his deposition, Woollen testified that he drove his boat down Keith Road with Hill to pick up Cass, Stephanie, and their daughter, and after he took the Casses to get gas for their generator, he decided to help rescue a family. According to Woollen, the next thing he remembers was hearing his wife tell him that he had been electrocuted. Woollen testified that prior to the accident, he never contacted Entergy regarding the power lines, but he had heard that the power was supposed to have

been turned off. Woollen explained that when he was operating his boat, the back of his head contacted the power line.

Hill testified that he volunteered to help Woollen in rescue efforts. Hill testified that after they took the Casses to get gas and to check on a friend's cat, they planned to navigate across the highway to help people who needed a boat. Hill explained that they followed the streets and stayed on the roadway until they reached Artesian Acres where the accident occurred. According to Hill, he did not remember the accident or being near any power lines. Hill testified that prior to the accident, he did anticipate that he would be near power lines, but he did not call Entergy to de-energize any power lines.

Cass testified that he, Stephanie, and his daughter, Natalie, were with Woollen and Hill when the accident occurred. Cass testified that they decided to help evacuate people on the other side of Highway 69, and Woollen drove the boat while Hill navigated. Cass explained that he saw power lines along the road, and they tried to stay as far away as possible because they did not know if the lines were energized. Cass also explained that they had to travel under one or two lines, but he could not remember if they were cable or power lines. Cass testified that while they were navigating through the neighborhood, they encountered some dry roads and had to travel between houses and through individual yards. According to Cass, they had to be careful because it was "fairly tight" navigating between houses.

4

Cass testified that at one point they were navigating between two houses when they encountered a power line in the backyard of the houses that blocked their route. Cass explained that Woollen throttled down the engine while they discussed how they were going to navigate around the power line, but the boat drifted towards the power line, causing the power line to electrocute Hill and Woollen by contacting the boat and Woollen's head. Cass testified that the boat came within two to three feet of the power line, which they assumed was energized, and he did not know if Woollen or Hill had contacted Entergy before they entered the area.

Stephanie testified that on the day of the accident, she rode with Woollen and Hill to check on pets and to help with evacuation efforts. Stephanie testified that they traveled under power lines and assumed that they were energized, but she also assumed that they were dead because there was no power. Stephanie explained that some of the roads were not flooded, and they had to travel through individual yards and between houses. Stephanie further explained they found themselves in what they assumed was the backyard of someone's home when they encountered a power line that they had to maneuver under, and Stephanie testified that the power line came in contact with the boat and Woollen's head. Stephanie testified that nobody told her that the power lines were de-energized, and on the day of the accident, she did not have any conversations with Entergy.

In his affidavit, David Richard averred that he was employed by Entergy as Sr. Manager, Operations and Safety and that he has personal knowledge of the power lines contacted by Woollen and Hill. Richard testified that the bare overhead powerline contacted by Woollen and Hill carried 7,600 volts measuring from phase to ground.

Plaintiffs filed a Response to Defendant's Motion for Summary Judgment in which they argued that Entergy's motion should be denied because Chapter 752 does not apply when a person comes in contact with an overhead line while on the water engaging in rescue boating activities during natural disasters. Plaintiffs further argued that if Chapter 752 does apply, complying with the statute during hurricane rescues is an impossibility. Plaintiffs argued that the statute's legislative history shows that the statute was designed to address dangers associated with anticipated work around power lines and not to insulate Entergy from liability during natural disasters. Plaintiffs further argued that Chapter 752 does not apply to accidents that occur on water because the statute specifically provides that it applies to accidents that occur on land, a building or highway, or other premises. According to Plaintiffs, the accident happened on a boat and on the water, and the only possible location that could apply would be a "premises," but the statute does not define "premises" and water does not fall under the term's common definition.

Plaintiffs also argue that the statute only applies to "work" because the intent of the statute was to address concerns with employers and employees working around power lines. Plaintiffs contend that the statute does not apply because they did not intend to perform work around high voltage lines. According to Plaintiffs, although Entergy was aware of the flood and the presence of rescue boaters, Entergy was negligent because it failed to take all necessary steps to ensure the safety of citizens by de-energizing all the power lines in the flooded areas, and Entergy should not be afforded immunity for activities that it knew were ongoing by claiming that it was required to be notified by boaters performing rescue operations. Plaintiffs' summary-judgment evidence includes, among other items, the statute's Bill Analysis; a News Release issued by Entergy regarding its preparations for Tropical Storm Harvey; excerpts from the deposition of Richard; excerpts from the deposition of Cass; and Trouble Tickets from Entergy's Outage Management System.

In an Amended Order, the trial court denied Entergy's Motion for Summary Judgment and made the following findings:

1. There are substantial grounds for differences of opinion regarding the one controlling question of law presented by [Entergy's] Motion for Summary Judgment – whether the Texas Health & Safety Code §§ 752.001-.008 apply to the facts presented, to which this Court rules that the statute does not apply to the facts presented in this case; and

2. Since the application of the statute would result in the dismissal of Plaintiffs' claims in this case through circular indemnity, an

7

immediate appeal from this Amended Order may materially advance the ultimate termination of this litigation.

Entergy filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d).

## ANALYSIS

In its sole issue, Entergy argues that the trial court erred in denying its Motion for Summary Judgment because Chapter 752 applies to the facts in this case, it is undisputed that Plaintiffs violated the statute, and Plaintiffs' violation results in circular indemnity. Entergy argues that the plain language of Chapter 752 makes it clear that the Legislature intended the provisions to apply to both employment and non-employment activities. *See* Tex. Health & Safety Code Ann. §§ 752.003, 752.004. According to Entergy, the plain language of the statute expressly includes activities on land or other premises, which would include Plaintiffs' rescue boating activity. Entergy also argues Plaintiffs are not exempt from complying with the statute and that Chapter 752 applies to Plaintiffs regardless of Plaintiffs' intent or any allegations of negligence against Entergy.

Plaintiffs argue that Chapter 752 does not apply because Plaintiffs were not involved in any sort of work or activity or function as contemplated by Chapter 752. *See id.* §§ 752.003-.005. Plaintiffs further argue that Chapter 752 does not apply to people who are simply traveling in the vicinity of a power line or to boats traveling on the water. According to Plaintiffs, since they had no intent to perform any work

8

around high voltage power lines, they were not required to notify Entergy, and since the winds and current drifted the boat into the power line, Plaintiffs should not be held liable for Entergy's losses because they were not responsible for any alleged violation of Chapter 752. *See id.* §§ 752.003, 752.007, 752.008. Plaintiffs contend that the fact that such a violation would result in a criminal penalty provides a compelling reason not to construe the statute in a manner that would include people who were merely passing by a powerline while rescuing victims during natural disasters.

We review rulings on motions for summary judgment using a *de novo* standard. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The moving party has the burden to show with competent summary-judgment evidence that no genuine issue of material fact exists and it is entitled to summary judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985).

On appeal, we review the summary-judgment record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). We credit evidence in favor of the verdict if reasonable jurors could and disregard evidence that contradicts the verdict unless reasonable jurors could not. *Id.*

9

at 827. Summary judgment for a defendant is proper only if the defendant negates at least one element of each of the plaintiff's theories of recovery. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). A party asserting an affirmative defense has the burden of pleading and proving the defense as a matter of law such that there is no genuine issue of material fact. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310-11 (Tex. 1984); *Chavez v. City of San Antonio ex rel. v. City Public Service Bd. of San Antonio*, 21 S.W.3d 435, 438 (Tex. App.—San Antonio 2000, pet. denied); *see also* Tex. R. Civ. P. 94.

The issue in this appeal involves statutory construction, which is a question of law that we review *de novo*. *See Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002). When construing a statute, we must ascertain the Legislature's intent in enacting the statute. *Fleming Foods of Tex. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). In determining the Legislature's intent, we look to the plain meaning of the words used in the statute. *See Fireman's Fund Cty. Mut. Ins. Co. v. Hidi*, 13 S.W.3d 767, 768-69 (Tex. 2000). We presume every word was deliberately chosen and that excluded words were purposely omitted. *USA Waste Servs. of Houston, Inc. v. Strayhorn*, 150 S.W.3d 491, 494 (Tex. App.—Austin 2004, pet. denied). We must consider the entire act and not isolated portions. *See Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998). We may also consider the legislative history, the "object sought to be attained[]" by enacting the statute, and the "consequences of a particular

10

construction[.]" Tex. Gov't Code Ann. § 311.023. However, legislative history cannot be used to alter or disregard the express terms of a code provision when its meaning is clear. *Rylander*, 6 S.W.3d at 284.

We now turn to the relevant provisions of Chapter 752 of the Texas Health and Safety Code, which pertains to persons who engage in activities near high voltage power lines. *See* Tex. Health & Safety Code Ann. §§ 752.001-.008; *McCaughtry v. Barwood Homes Ass'n*, 981 S.W.2d 325, 334 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). Section 752.001(1) defines "high voltage" as "more than 600 volts measured between conductors or between a conductor and the ground." Tex. Health & Safety Code Ann. § 752.001(1). Section 752.002 provides exemptions for certain employees and activities and notes the Chapter "does not apply to the construction, reconstruction, operation, or maintenance by an authorized person of overhead electrical or communication circuits or conductors[.]" *Id.* § 752.002(a). Section 752.003 requires a person responsible for temporary work or a temporary activity or function within certain prescribed proximities to a high voltage overhead line to notify the operator of the line at least forty-eight hours before any work, activity, or function begins and to arrange for temporary de-energization of the line or other safety precautions to prevent contact between the line and the material or equipment or the person performing the work, activity, or function. *Id.* § 752.003(a)-(b). Section 752.004 requires a person to first comply with section

11

752.003 before performing a function or activity on land, a building, a highway, or other premises if at any time the person performing the function or activity may "(1) move or be placed within six feet of a high voltage overhead line while performing the function or activity; or (2) bring any part of a tool, equipment, machine, or material within six feet of a high voltage overhead line while performing the function or activity." *Id.* § 752.004(a)-(b). Unless a person guards against danger by contact with the line as prescribed by section 752.003, a person may not operate any equipment within six feet of a high voltage line. *Id.* § 752.005(2).

The Legislature's intent behind passing Chapter 752 was to ensure the safety of individuals engaged in activities near power lines. *See Ringo v. Gulf States Util. Co.*, 569 S.W.2d 31, 65 (Tex. App.—Beaumont 1978, writ ref'd n.r.e.) (discussing purpose of the predecessor statute). A person who violates Chapter 752 is subject to a criminal penalty, and if the violation results in physical or electrical contact with a high voltage overhead line, the person is liable to the owner or operator of the line for all damages to the facilities and for all liability that the owner or operator incurs because of the contact. Tex. Health & Safety Code Ann. §§ 752.007, 752.008; *see also Trail v. Friedrich*, 77 S.W.3d 508, 513-14 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *Chavez*, 21 S.W.3d at 438-39. The purpose of the indemnification provision of Chapter 752 is to place the liability for losses resulting from noncompliance with the notification and safety provisions on the person responsible

for performing the temporary work, activity, or function near a high voltage overhead line. *See Chavez*, 21 S.W.3d at 439.

We are not persuaded by Plaintiffs' argument that Chapter 752 only applies to people doing work in the vicinity of power lines. The statute is unambiguous, and where statutory text is clear the text of the statute determines the Legislature's intent. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). It is clear that the Legislature did not intend for Chapter 752 to only apply to employees performing work because the Legislature included the terms "function" and "activity" in addition to "work," and the Legislature also included the terms "person" "individually," and "employee" with the conjunction "or," which makes it clear that the provisions were intended to apply to both employment and non-employment activities. *See* Tex. Health & Safety Code Ann. §§ 752.003, 752.004; *Presley v. Gulf States Utils. Co.*, No. 09-10-00039-CV, 2010 WL 4264097, at *6 (Tex. App.—Beaumont Oct. 28, 2010, pet. denied) (mem. op.).

We disagree with Plaintiffs' contention that the legislation was aimed at work being done on land and things solidly grounded and does not apply to events happening in a boat on the water. While Chapter 752 does not define the term "premises," Chapter 481 of the Texas Health and Safety Code defines "premises" as "real property and all buildings and appurtenances pertaining to the real property." *See* Tex. Health & Safety Code. Ann. §§ 481.134(a)(4), 752.001. Section 752.004

13

expressly includes activities "on land, a building, a highway, or other premises[.]" *Id.* § 752.004. It is undisputed that Plaintiffs were in a boat over someone's privately owned real property that was temporarily flooded, and that the real property remained a premises before, during, and after Hurricane Harvey. *See Baker v. City of Fort Worth*, 210 S.W.2d 564, 567 (Tex. 1948) (stating that a flood overflowed petitioner's premises and inflicted damages); *City of Austin v. Leggett*, 257 S.W.3d 456, 474-75 (Tex. App.—Austin 2008, pet. denied) (explaining that a flooded intersection is an ordinary premises defect). We conclude that Chapter 752 applies to Plaintiffs' temporary activity of conducting rescue boating operations on a premises.

We also disagree that Plaintiffs are not responsible for contacting the power line. A person is responsible for violating Chapter 752 when they have the desire to perform a temporary activity and have some degree of control over the activity. *See* Tex. Health & Safety Code. Ann. § 752.003; *Chavez*, 21 S.W.3d at 439. It is undisputed that Plaintiffs made the decision to take the boat into flooded waters and perform rescue operations, and while navigating the boat, Plaintiffs came into contact with a power line. The fact that Plaintiffs did not plan to perform a temporary activity near an overhead power line or unexpectedly became aware of the possibility that an activity would have to be performed near a power line does not excuse Plaintiffs from the obligation of informing Entergy before initiating the activity. *See*

14

*AEP Tex. North Co. v. SPA Pipe, Inc.*, No. 03-06-00122-CV, 2008 WL 5210919, at *6 (Tex. App.—Austin 2008 Dec. 12, 2008, pet. dism'd) (mem. op.). A contrary construction would be inconsistent with the public policy interests of imposing liability on the person performing an activity near a power line and of minimizing the potentially devastating consequences of doing so. *See id.*

Additionally, we conclude that Plaintiffs are not exempt from complying with Chapter 752. By its plain language, Chapter 752 does not exempt private persons engaged in performing rescue operations from indemnity for failure to comply with section 752.003. *See* Tex. Health & Safety Code. Ann. §§ 752.002, 752.003. Section 752.002 expressly exempts certain employees and activities from complying with the provisions of the Act, and if the Legislature wanted to exclude persons performing rescue operations from the Act's application it could have done so. *See id.* Moreover, since section 752.008 does not contain qualifications limiting its applicability to situations in which the utility is without fault, Chapter 752's indemnity provision applies regardless of any alleged negligence on Entergy's part. *See id.* § 752.008; *AEP Tex. North Co.*, 2008 WL 5210919, at *6.

Based on the record before us, we conclude Entergy established as a matter of law that Chapter 752 applies to the facts in this case, Plaintiffs violated Chapter 752 by performing an activity on a premises that brought Plaintiffs and their boat within six feet of a high voltage overhead power line without first making arrangements

15

with Entergy, and Plaintiffs' claims are extinguished due to circular indemnity. *See* Tex. Health & Safety Code Ann. §§ 752.001-.008. We further conclude that the trial court erred by denying Entergy's Motion for Summary Judgment. In its Motion for Summary Judgment, Entergy sought to recover costs; therefore, we sustain Entergy's sole issue and reverse the trial court's Amended Order and remand to that court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on August 26, 2021
Opinion Delivered November 10, 2021

Before Golemon, C.J., Kreger and Johnson, JJ.